BURNS, STIX FRIEDMAN & CO., INC. (FORMERLY SEMPLE, JACOBS & CO., INC.), PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4798–69. Filed December 16, 1971.

*Henry C. Lowenhaupt*, for the petitioner.
*St. Clair Reeves*, for the respondent.

### OPINION

DRENNEN, *Judge:* On July 21, 1970, petitioner filed a motion requesting this Court to take no further action in this case on the basis that (1) the transfer of its cause from "an independent agency in the Executive Branch of the Government" [1] to a "court of record" established "under Article I of the Constitution of the United States" [2] is a transfer without due process of law, or (2) any action taken by this Court would be an exercise of judicial power which can only be exercised by a court established under article III of the Constitution. Respondent filed an objection to the motion and a hearing on the motion was held after which the Court took the motion under advisement. Both parties filed briefs in support of their respective positions.

At the hearing and on brief, petitioner, abandoned its argument that the transfer of its cause from the Tax Court of the United States to the United States Tax Court [3] was a transfer without due process of law.[4] Thus, the only issue before us is whether this Court is prohibited from taking action herein since it is not established pursuant to the provisions of article III of the Constitution.

Petitioner is a corporation with its principal office being located in St. Louis, Mo., at the time it filed its petition herein. Petitioner filed its Federal corporation income tax return for its fiscal years ending May 31, 1965, and May 31, 1966, with the district director of internal revenue, St. Louis, Mo.

An August 14, 1969, respondent issued a notice of deficiency to petitioner in which he determined deficiencies in petitioner's income tax

---

[1] As this Court was designated in sec. 7441, I.R.C. 1954, prior to its amendment by the Tax Reform Act of 1969.

[2] Sec. 7441, as amended by the Tax Reform Act of 1969.

[3] The name of this Court was changed from Tax Court of the United States to United States Tax Court by the Tax Reform Act.

[4] The due-process argument appears to have been disposed of by *Cheatham* v. *United States*, 92 U.S. 85, *Phillips* v. *Commissioner*, 283 U.S. 589, *Willmut Gas & Oil Co.* v. *Fly*, 322 F. 2d 301, and other cases.

for its fiscal years ending May 31, 1965, and May 31, 1966. Petitioner filed its petition herein on September 22, 1969, which date was prior to the effective date (December 30, 1969) of the Tax Reform Act of 1969, Pub. L. 91–172 (hereinafter Tax Reform Act).

Section 951 of the Tax Reform Act amended section 7441, I.R.C. 1954, to change the status of this Court from that of an "independent agency in the Executive Branch of the Government" to a "court of record" established "under article I of the Constitution of the United States." Petitioner contends that by virtue of that legislation Congress established this Court as a judicial tribunal to adjudicate "cases and controversies" arising under the laws of the United States and thus to exercise "judicial power." Petitioner further contends that since the exercise of "judicial power" is restricted by virtue of section 1 of article III of the Constitution to courts established under the provisions of article III, this Court, being established under article I and its judges not having the life tenure and undiminishable compensation provided by article III,[5] may not, and its judges should not, exercise such "judicial power." Thus, essentially, petitioner contends that Congress exceeded its authority in creating this Court as a "court of record" under article I of the Constitution without regard to the sanctions of article III.

Section 1 of article III of the Constitution states:

The judicial Power of the United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

Section 2 of article III states:

The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; * * * to Controversies to which the United States shall be a Party; * * *

Section 1 of article I of the Constitution states:

All legislative powers herein granted shall be vested in a Congress of the United States, * * *

In section 8, clause 9, of article I, Congress is given the power "To constitute Tribunals inferior to the supreme Court." It has been said, however, that this power "plainly relates to the 'inferior Courts' provided for in Art. III, § 1," and "it has never been relied on for estab-

---

[5] The term of office of the judges of the U.S. Tax Court is 15 years. Sec. 7443(e), I.R.C., as amended. Furthermore, any judge of this Court must retire upon attaining 70 years of age, sec. 7447(b), as amended, and may be removed from office by the President for inefficiency, neglect of duty, or malfeasance in office, sec. 7443(f), as amended.

394

lishment of any other tribunals." *Glidden Co.* v. *Zdanok*, 370 U.S. 530, 543 (1962).

There is no other section in article I which expressly grants Congress the power to create courts. However, in *Ex Parte Bakelite Corp'n.*, 279 U.S. 438, 449 (1929), the Supreme Court stated:

> While Article III of the Constitution declares, in section 1, that the judicial power of the United States shall be vested in one Supreme Court and in "such inferior courts as the Congress may from time to time ordain and establish," and prescribes, in section 2, that this power shall extend to cases and controversies of certain enumerated classes, it long has been settled that Article III does not express the full authority of Congress to create courts, and that other Articles invest Congress with powers in the exertion of which it may create inferior courts and clothe them with functions deemed essential or helpful in carrying those powers into execution.

The "other Articles" referred to above which Congress has used to create courts without regard to article III are article I and article IV. Article IV has been interpreted to give Congress the power to create courts in the territories, *American Insurance Co.* v. *Canter*, 1 Pet. 511 (1828), while article I has been interpreted to give Congress the power to create courts to assist it in carrying out its powers under article I. *Ex Parte Bakelite Corp'n.*, *supra; Williams* v. *United States*, 289 U.S. 553. Those courts created by Congress pursuant to the power granted in article I, section 8, clause 9, and article III have come to be referred to as "constitutional" or "article III" courts, while those created under other powers vested in Congress under article I are referred to as "legislative" or "article I" courts.[6]

In article I, section 8, clause 1, Congress is given the power to lay and collect taxes and in clause 18 thereof the power to make all laws necessary and proper to carry into execution that power. It was in the exercise of that power that Congress in 1924 created the Board of Tax Appeals, Revenue Act of 1924, 43 Stat. 253, 336, in order that taxpayers would have a forum in which they could have deficiencies in their taxes determined to be owing by the Commissioner of Internal Revenue redetermined prior to payment of the additional tax.[7] In

---

[6] This concept has been extended to the Federal courts at least since 1828 when Chief Justice Marshall, in *American Insurance Co.* v. *Canter*, 1 Pet. 511 (1828), referring to territorial courts, said at p. 546:

"These courts, then, are not constitutional courts, in which the judicial power conferred by the constitution on the general government, can be deposited. They are incapable of receiving it. They are legislative courts, created in virtue of the general right of sovereignty which exists in the government, or in virtue of that clause which enables congress to make all needful rules and regulations, respecting the territory belonging to the United States."

[7] Prior to the establishment of the Board of Tax Appeals the taxpayer's only remedy was to pay the deficiency first and bring suit against the collector or the United States to recover the alleged overpayment in either the U.S. District Court or the Court of Claims. This distinction in jurisdiction over tax matters between those two courts and the Tax Court continues up to the present. *Flora* v. *United States*, 362 U.S. 145.

The decisions of the Board of Tax Appeals were not final under the 1924 Act but could be retried *de novo* in the District Courts. However, in the Revenue Act of 1926, 44 Stat. 9, which described the Board as an "independent agency in the Executive Branch of the government," the decisions of the Board were made final unless appealed to the U.S. Courts of Appeals where they were reviewed on the record made before the Board.

1942 Congress changed the name of the Board to the Tax Court of the United States and made its members judges, in recognition of the fact that the Court performed only judicial functions. Its basic jurisdiction, however, was not changed, and it remained an independent agency in the Executive Branch of the Government.

Court decisions have sustained the constitutionality of the Board of Tax Appeals and the Tax Court of the United States in the exercise of the jurisdiction conferred upon them by Congress. *Nash Miami Motors, Inc.* v. *Commissioner*, 358 F. 2d 636 (C.A. 5, 1966), certiorari denied 385 U.S. 918; *Martin* v. *Commissioner*, 358 F. 2d 63 (C.A. 7, 1966); *Willmut Gas & Oil Co.* v. *Fly*, 322 F. 2d 301 (C.A. 5, 1963), certiorari denied 375 U.S. 984; *Standard Hosiery Mills* v. *Commissioner*, 249 F. 2d 469 (C.A. 4, 1957). Cf. *Flora* v. *United States*, 362 U.S. 145; and the discussion in *Dobson* v. *Commissioner*, 320 U.S. 489.

Did the provisions of the Tax Reform Act of 1969 so change the status and function of the Tax Court that it is now exercising the "judicial powers" referred to in article III and must be established as an article III court with its judges having the tenure and compensation protection provided in section 1 of article III? We think not.

As hereinafter noted the Tax Reform Act of 1969 did not change the basic jurisdiction of the Tax Court. "The United States Tax Court * * * is a continuation of the Tax Court of the United States as it existed prior to the date of enactment of this Act * * * and no loss of rights or powers, interruption of jurisdiction, or prejudice to matters pending in the Tax Court of the United States * * * shall result from the enactment of this Act." Sec. 961, Tax Reform Act of 1969. It is clear from the statutory language and the Senate committee report (S. Rept. No. 91–552, 91st Cong., 1st Sess., p. 302, 1969–3 C.B. 614) that Congress removed the Tax Court from the Executive Branch and established it as an article I court primarily for the purpose of recognizing its status as a judicial body and disposing of any problems that its status as an executive agency sitting in judgment on another executive agency might pose.

As heretofore noted, it has long been recognized that Congress has the power and authority to create "*courts*" that do not meet the requirements of article III. *American Insurance Co.* v. *Canter, supra* (territorial courts); *Ex Parte Bakelite Corp'n., supra* (Court of Customs Appeals); *Williams* v. *United States*, 289 U.S. 553 (1933) (Court of Claims); *O'Callahan* v. *Parker*, 395 U.S. 258 (1969) (Court of Military Appeals). Cf. *O'Donoghue* v. *United States*, 289 U.S. 516.[8] Petitioner argues that because in the Tax Reform Act the Tax Court was removed from the Executive Branch and made a "court of record," and it was specifically given the power to punish for contempt, and re-

---

[8] We have been cited no case and have found none in which the Supreme Court has held any non-article III court unconstitutional.

view of its decisions are now made by "appeal" rather than "petition for review," it has become a court which must be established under and be protected by article III. We disagree. Those provisions simply recognize the Tax Court as a "court," which it is clear Congress may establish without reliance upon article III. The fact that the Tax Court has the characteristics of a court and performs its functions in judicial manner, as we think it does, see *Stern* v. *Commissioner*, 215 F.2d 701, 707 (C.A. 3, 1954), and has no legislative, administrative, or advisory powers, does not necessarily mean that it must be established under article III of the Constitution.

The basic jurisdiction of the Tax Court was not changed by the Tax Reform Act. That basic jurisdiction is now limited to redetermining deficiencies in Federal income, estate, and gift taxes,[9] as was the jurisdiction of the Tax Court of the United States and the Board of Tax Appeals. Sec. 7442, I.R.C. 1954, prior and subsequent to the Tax Reform Act. The Court presently has no jurisdiction to execute its decisions; it does not render a monetary judgment; it simply determines the amount of the deficiency or overpayment of tax.[10] The Tax Court has only such jurisdiction as is conferred upon it by statute. It has no jurisdiction to exercise the broad common law concept of "judicial power" invested in courts of general jurisdiction by article III of the Constitution. If the jurisdiction and function presently vested in the Tax Court could be exercised constitutionally by an "independent agency within the Executive Branch," see *Old Colony Trust Co.* v. *Commissioner*, 279 U.S. 716 (1929), there is little reason to believe that Congress could not constitutionally delegate that jurisdiction to a "legislative court."

The most recent decisions of the Supreme Court on the subject of "legislative" vs. "constitutional" courts, include the *Bakelite* and *Williams* cases and *Glidden Co.* v. *Zdanok, supra,* and their companion cases. In the *Bakelite* case the issue was whether the Court of Customs Appeals could entertain an appeal from the findings of the Tariff Commission in a proceeding conducted under the Tariff Act of 1922, it being argued that the Court was a constitutional court and had no jurisdiction of any proceeding that was not a case or controversy. The Supreme Court held that the Court of Customs Appeals was a "legislative" rather than a "constitutional" court and therefore could exercise the jurisdiction conferred upon it by statute regardless

---

[9] The Tax Court was given additional jurisdiction over deficiencies in excise taxes imposed on private foundations under sec. 101 of the Tax Reform Act. See secs. 6211 and 6512, I.R.C. 1954, as amended by the Tax Reform Act. Also, its jurisdiction over renegotiation of Government contract cases was transferred to the Court of Claims by Pub. L. 92–41, 92d Cong., 1st Sess., H.R. 8311, July 1, 1971.

[10] We do not intend to imply that if the Tax Court had such or even more extensive jurisdiction in tax matters it would have to be an article III court.

of whether it was a case or a controversy. In the *Williams* case the question was whether the Court of Claims was a constitutional court so that the salary of one of its judges could not be reduced. The Supreme Court held that while it was clear that the Court of Claims exercised judicial power, it was not the judicial power referred to in article III so as to bring its judges within the protection of that article as to tenure of office and compensation. In *Glidden* the issue was whether the Court of Claims and the Court of Customs and Patent Appeals were constitutional courts so that the judges thereof were qualified to sit as article III court judges. The Supreme Court concluded that they were. In this case, however, the issue is whether the Tax Court, specifically established under article I without the limitations of article III,[11] is exercising the "judicial power" referred to in article III in performing the functions required of it by law.

Because of the difference in the issues involved we do not believe any of the above cases are necessarily controlling in this case. However, the discussion of the subject in those opinions, particularly in the three different opinions in the *Glidden* case, are exhaustive and make unnecessary and uncalled for any historical discussion on the subject in this opinion; but unfortunately, rather than being conclusive of the issue before us, they reveal the diversity of opinion that still exists on the subject. However, we think they do support the conclusion we reach here.

In *Ex Parte Bakelite Corp'n.*, *supra* at 451–452, the Supreme Court stated with regard to Congress' power to establish legislative courts:

Legislative courts also may be created as special tribunals to examine and determine various matters, arising between the government and others, which from their nature do not require judicial determination and yet are susceptible of it. The mode of determining matters of this class is completely within congressional control. Congress may reserve to itself the power to decide, may delegate that power to executive officers, or may commit it to judicial tribunals.

Conspicuous among such matters are claims against the United States. These may arise in many ways and may be for money, lands, or other things. They all admit of legislative or executive determination, and yet from their nature are susceptible of determination by courts; but no court can have cognizance of them except as Congress makes specific provision therefor. Nor do claimants have any right to sue on them unless Congress consents; and Congress may attach to its consent such conditions as it deems proper, even to requiring that the suits be brought in a legislative court specially created to consider them.

---

[11] See S. Rept. No. 91–552, 91st Cong., 1st Sess., p. 304 (1969), 1969–3 C.B. 615, wherein it is stated:

"The bill establishes the Tax Court as a court under Article I of the Constitution dealing with the legislative branch.[3]

"At the present time the Court of Military Appeals is the only other Article I court. Other courts, however, have enjoyed this status in the past, including the Court of Claims. * * *" [Fn. omitted.]

See also the statement made by Chief Justice Marshall in *American Insurance Co.* v. *Canter, supra,* quoted in footnote 6.

The question thus becomes whether the "matters" "examined" and "determined" by the Tax Court are susceptible of judicial determination and yet from their nature do not require it.

"The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled." *Phillips* v. *Commissioner,* 283 U.S. 589, 595 (1931). Indeed, "If there existed in the courts, State or National, any general power of impeding or controlling the collection of taxes, or relieving the hardship incident to taxation, the very existence of the government might be placed in the power of a hostile judiciary." *Cheatham* v. *United States,* 92 U.S. 85, 89 (1875). See also *Willmut Gas & Oil Co.* v. *Fly, supra.* Thus, without a doubt, the jurisdiction of this Court, being primarily to hear and decide tax cases in which the Commissioner of Internal Revenue has issued a notice of deficiency, is not of the type which *requires* the exercise of article III judicial powers even though all matters within its jurisdiction are *susceptible* of judicial determination. Cf. *Nash Miami Motors, Inc.* v. *Commissioner, supra.*

It cannot be said, therefore, that Congress having the authority to create special tribunals to determine matters between the Government and others which do not require judicial determination, but are susceptible of it, exceeded its authority in establishing this Court as an article I court without regard to the limitations of article III. While article III is explicit in requiring that the "judicial power" of the United States referred to therein shall be vested in article III courts, there is nothing in that requirement which prohibits this Court, as an article I court, from adjudicating tax disputes between taxpayers and the Government where a deficiency notice has been issued, for the Supreme Court has clearly held, in *Williams* v. *United States, supra* at 580–581, that:

since Congress, whenever it thinks proper, undoubtedly may, without infringing the Constitution, confer upon an executive officer or administrative board, or an existing or specially constituted court, or retain for itself, the power to hear and determine controversies respecting claims against the United States, it follows indubitably that such power, in whatever guise or by whatever agency exercised, is no part of the judicial power vested in the constitutional courts by the third article. That is to say, a power which may be devolved, at the will of Congress, upon any of the three departments plainly is not within the doctrine of the separation and independent exercise of governmental powers contemplated by the tripartite distribution of such powers. * * *

The most recent case decided by the Supreme Court on the subject is *Glidden Co.* v. *Zdanok, supra.* In that case and its companion case, *Lurk* v. *United States,* 370 U.S. 530, however, the Court was concerned

with whether judges of the Court of Claims and the Court of Customs and Patent Appeals could validly serve, by assignment by the Chief Justice of the Supreme Court, on the United States District Courts and Courts of Appeals. The judges involved had tenure during good behavior under the law, and subsequent to the decisions in the *Bakelite* and *Williams* cases, Congress had specifically established both courts as article III courts. In the present case the Tax Court was expressly established as an article I court and its judges are appointed for 15-year terms, and there is no issue as to the qualifications of its judges to sit on article III courts. Nevertheless, much that was written in the three opinions in the *Glidden* case is relative to the question before us and we have examined them with great care.

Only seven Justices of the Supreme Court participated in the *Glidden* case. Three of the Justices joined in the numerical majority opinion which concluded that the two specialized courts were established under article III of the Constitution and the judges were thus qualified to sit as article III judges. There seems to be some diversity of opinion whether this opinion was intended to overrule the *Bakelite* and *Williams* cases, which had reached contrary conclusions, but it seems clear that a majority of the Court did not overrule those cases.[12] Two Justices concurred in the result, but did not agree to the "unnecessary overruling" of the *Bakelite* and *Williams* cases, concluding that while the two specialized courts had always had characteristics of article III courts, the actions of Congress, subsequent to the *Bakelite* and *Williams* decisions, specifically designating those courts as article III courts, clearly indicated the intent of Congress that they were established as article III courts, thus renouncing any rights it might have had to change the tenure and compensation of the judges, and thus clearly making them article III courts. The two Justices who dissented, clearly recognizing the power of Congress to create specialized courts under article I, found that the two judges involved did not perform article III functions and therefore could not be article III judges.

Although the Supreme Court split three ways in its analysis of the character of the courts in question and the authority of the judges thereof, in none of the three analyses was the basic power of Congress to create legislative courts challenged; nor was any doubt cast on the continuing validity of the proposition laid down by Justice Marshall in the *American Insurance Co.* case and more recently espoused in the *Bakelite* and *Williams* cases that Congress may delegate to such courts jurisdiction over matters which are susceptible of judicial de-

---

[12] See the per curiam opinion of the Court of Appeals for the Fifth Circuit on petition for rehearing in *Nash Miami Motors, Inc.* v. *Commissioner*, 358 F.2d 636.

termination but by their nature do not require it.[13] The numerical majority opinion referred to the following quotation from *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272, 284:

there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.

In explaining the meaning of the above passage the opinion said it meant that while Congress may employ other than article III courts to exercise jurisdiction that is not " 'inherently' judicial business" this does not mean that it must. In doing so it assumed "that none of the jurisdiction vested in our two courts is of that sort, so that all of it might be commuted for final determination to non-Article III tribunals, be they denominated legislative courts or administrative agencies."

The principal thrust of the numerical majority opinion in *Glidden*, as set out in its conclusions, was that the judges of the two courts had always had the protection of article III, and the specialized functions of those judges could not deprive them of capacity to sit on the District Courts and Courts of Appeals. That conclusion is inapposite here. We do not say that a court performing the functions of this Court, if created by Congress as an article III court with its judges being given the tenure and compensation protection of article III, could not be an article III court. We do say that the matters entrusted to the Tax Court under the Tax Reform Act are matters which, while susceptible of judicial determination, do not require the exercise of "judicial power," as that term is used in article III, and that Congress may employ other than article III courts to exercise jurisdiction over such matters.

In our opinion Congress acted wholly within its constitutional power in creating this Court as an article I court without regard to the provisions of article III; and this Court may exercise the jurisdiction conferred upon it by Congress without violating article III. Consequently, petitioner's motion will be denied.

Reviewed by the Court.

> *An appropriate order in accordance with this Opinion will be entered.*

———

RAUM, *J.*, concurring: The conclusion of the majority is clearly correct, but its opinion appears to discuss considerations (e.g., the fact

---

[13] The Court of Claims has long had jurisdiction over tax matters in refund suits. Yet in *Williams* v. *United States*, 289 U.S. 533, which found the Court of Claims, under the then effective law, to be a legislative rather than an article III court, no question was raised as to the authority of that court to decide tax cases.

that the litigation before the Court involves the review of a determination of deficiency) which in my judgment are not of any constitutional significance. This concurring opinion is being filed to make clear that the power of Congress to establish this Court under article I of the Constitution to adjudicate Federal tax controversies does not depend upon such considerations and that the result can be reached by a simpler and more direct route, as follows:

*First.* It has long and repeatedly been recognized over the history of this country that Congress has the power to establish specialized courts or courts of limited jurisdiction outside of article III.[1] And although uttered in an entirely different context, the words of Mr. Justice Holmes in *New York Trust Co.* v. *Eisner*, 256 U.S. 345, 349, are peculiarly apt here: "Upon this point a page of history is worth a volume of logic."

*Second.* At least from the time of the Revenue Act of 1926, when this tribunal was known as the Board of Tax Appeals up to the Revenue Act of 1942 when its name was changed to the Tax Court of the United States and from that point up until the enactment of the 1969 Act here under attack, this Court has functioned *solely* as a court and was given no nonjudicial powers by Congress. As we stated in *Fairmont Aluminum Co.*, 22 T.C. 1377, 1384–1385, affirmed 222 F. 2d 622 (C.A. 4), certiorari denied 350 U.S. 838, rehearing denied 350 U.S. 905, motion for leave to file second petition for rehearing denied 352 U.S. 913:

Whatever label might be used to characterize this Court for various purposes, its proceedings are, and were intended by Congress to be, in every sense of the word, judicial.[6] It is required by statute to act, and does act, solely in a judicial manner, and exercises only judicial power. We hear and decide only real controversies between adverse parties, following procedures that are inherently judicial. We make no independent investigation of the facts as do some agencies labeled "administrative" either upon our own motion or upon the motion

---

[1] See, e.g., *Williams* v. *United States*, 289 U.S. 553, 565 *et seq.; Ex parte Bakelite Corp'n.*, 279 U.S. 438; *Wallace* v. *Adams*, 204 U.S. 415; *United States* v. *Coe*, 155 U.S. 76, 85–86; *Keller* v. *Potomac Elec. Co.*, 261 U.S. 428, 442–444; *Romeu* v. *Todd*, 206 U.S. 358, 368; *McAllister* v. *United States*, 141 U.S. 174; *The "City of Panama"*, 101 U.S. 453, 460; *Reynolds* v. *United States*, 98 U.S. 145, 154; *Good* v. *Martin*, 95 U.S. 90, 98; *Benner* v. *Porter*, 9 How. 235, 242; and *American Insurance Co.* v. *Canter*, 1 Pet. 511, 545.

We do not believe that these cases were overruled by Mr. Justice Harlan's opinion in *Glidden Co.* v. *Zdanok*, 370 U.S. 530. Surely, if so drastic a result had been intended, the opinion would have explicitly so stated. Moreover, that opinion represents the views of only three of the seven justices who participated in the decision of that case, and cannot be taken to reflect the conclusions of a majority of the Court.

of one of the parties;[7] our findings of fact are based solely on evidence submitted to us by the parties in accordance with prescribed rules.[8] We do not appear as parties in court to enforce our orders or the law as do so-called administrative agencies.[9] Our findings of fact carry the same weight as those made by a District Court sitting without a jury.[10] Our decisions are final and may be attacked, in the same manner as District Court decisions, only by appeal to a United States Court of Appeals.[11]

[Footnotes omitted.]

To be sure, this tribunal was described in the statute as an "independent agency" in the executive branch of the Government, but the fact is that the powers and duties which Congress committed to this tribunal were *solely* those of a court, and they contradicted the label ("independent agency") placed upon it. Indeed its judicial (as opposed to administrative) character was of necessity recognized on numerous occasions, as for example in *Tait* v. *Western Md. Ry. Co.*, 289 U.S. 620, where an earlier adjudication by the Board of Tax Appeals was held to be res judicata in a subsequent suit in a Federal District Court.[2] Moreover, the constitutionality of the Board or the Tax Court has been explicitly sustained. See, e.g., *Nash Miami Motors, Inc.* v. *Commissioner*, 358 F. 2d 636 (C.A. 5), certiorari denied 385 U.S. 918. Indeed petitioner does not challenge the constitutionality of the Court prior to the enactment of the 1969 statute.

*Third.* Nothing in the 1969 legislation made unconstitutional that which was valid prior thereto. Such changes as the increase in the terms of the judges from 12 to 15 years are constitutionally irrelevant. And the action of Congress in describing the Court as being established as a legislative court under article I and in endowing it with some comparatively minor additional powers was not of such nature as to alter the basic character of the Court as it existed prior thereto. Indeed the change in label from "independent agency" to "court" was more in the nature of a change to make the label speak the truth. (Cf. *Kay* v. *Commissioner*, 178 F. 2d 772, 773 (C.A. 3), where the Court of Appeals referred to this Court as "an independent judicial tribunal, even though anomalously placed by the Internal Revenue Code in the executive branch of the Government.) The Court was a constitutional judicial body prior to the 1969 Act and the validity of its continued existence thereafter was not affected by that Act.

FAY, HOYT, TANNENWALD, and QUEALY, *JJ.*, agree with this concurring opinion.

---

[2] The decision of the Board had been entered after a reversal by a circuit Court of Appeals (see 289 U.S. at 622), but nothing in the Supreme Court's decision turned upon that fact. It is plain that the same result would have been reached had the decision of the Board been unreviewed.