MICHEAL A. BROUGHTON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Broughton v. Commissioner
Docket No. 5687-77.
United States Tax Court
T.C. Memo 1979-77; 1979 Tax Ct. Memo LEXIS 448; 38 T.C.M. (CCH) 327; T.C.M. (RIA) 79077; March 8, 1979, Filed Micheal A. Broughton, pro se. Albert B. Kerkhove, for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1974 and 1975 of $324.21 and $1,044.65, respectively, and additions to tax under section 6653(a), I.R.C. 1954, [1] for these years of $16.21 and $52.23, respectively. The issues for decision are (1) whether respondent's motion for partial summary judgment with respect to various issues raised as to the constitutionality of the income tax, whether the Tax *449 Court is a constitutional court, petitioner's right to a jury trial, and the only legal money being gold and silver, should be granted; and (2) whether petitioner is entitled to deductions for contributions, taxes, business expenses, casualty losses and travel expenses in excess of the amount determined by respondent in the notice of deficiency as modified by concessions made by respondent on brief. FINDINGS OF FACT Petitioner, who resided at Altoona, Iowa at the time of the filing of the petition in this case, was an unmarried individual during the years 1974 and 1975. He filed individual Federal income tax returns for each of these calendar years. During the years 1974 and 1975, petitioner was an iron worker. He worked for a company based in Des Moines, Iowa, but at times performed work for his employer in locations outside of Des Moines. Petitioner, during these years, was a foreman. In some instances he would be sent by his employer to a location outside of Des Moines but would employ the workers under his supervision through the local union halls at the place where the construction work was being performed. In other instances petitioner, with his entire crew, would *450 be sent outside of Des Moines to perform work. During 1974, petitioner worked for his employer outside the Des Moines area for 25 days. He also worked outside the Des Moines area for some days in 1975. When the entire construction crew was outside of Des Moines the employer would attempt to obtain special rates for motel accommodations for petitioner and the men under his supervision. When petitioner was the only employee sent outside the Des Moines area he arranged for his own living accommodations. Under either circumstance petitioner was reimbursed by his employer at a flat rate of $14 a day for each day he was outside the Des Moines area for his meals and lodging and other living expenses. Petitioner's employer furnished transportation to petitioner at no cost. However, during part of the year 1975 petitioner drove his own car to the places he was employed outside of Des Moines because he was attending school on some evenings and wanted his own car available to drive back to Des Moines to attend his classes at school. In order to perform the work required of him petitioner was required to furnish for himself certain safety equipment and small tools necessary for his work. *451 The safety equipment which petitioner was required to furnish included a hard hat, a safety belt and steel-toed boots. Petitioner was required to furnish such tools as a hammer, screwdrivers, tap and die sets, pins, crescent wrenches, sockets and ratchets. If any of petitioner's tools were broken while he was actually working on a project, that tool would be replaced by his employer. However, any tools which were lost or dropped during the course of petitioner's work had to be replaced by petitioner. During the year 1974, petitioner expended $128.85 on purchases of small tools used in his work which normally would be of service to him for not over one year. Of this amount, $100.85 was paid to Sears for Craftsman tools and $28 to Iowa Machinery for high quality grips and sockets. Also in 1974, petitioner bought a pair of safety boots needed in his work at a cost of $35.25. Because of the nature of petitioner's work, a pair of safety boots lasts him less than a year. In 1975, petitioner spent $315.15 for small hand tools and other work accessories. During 1974 and 1975, petitioner made contributions to the First Church of the Open Bible and the First Federated Church. Each *452 Sunday petitioner contributed not less than $10 nor more than $20 to one of these churches. Petitioner tithed, and the contributions he made, either by check or cash, were his judgment of 10 percent of his weekly earnings. During 1974, petitioner contributed by checks -- some for $10, some for $15 and others for $20 -- a total amount of $325 to these churches. On Sundays, when petitioner did not contribute by check, he made cash contributions in an amount of $10, $15 or $20. Petitioner's total contribution to these churches during 1974 was $750. During 1975, petitioner contributed to the First Federated Church by various checks a total amount of $800. In 1974, petitioner purchased a new Ford Torino authomobile and paid sales tax of $139.50 with respect to the purchase. During the same year he completely wrecked the automobile. The insurance company paid to him the value of the automobile he wrecked and petitioner bought a used automobile and in connection with the purchase, when the title was transferred to him, paid $36 sales tax. During 1975 petitioner bought a trailer home. In connection with the purchase he paid to the Polk County Treasurer $509.83. Of this amount, *453 $179 was for licensing of the trailer and $330 was personal property tax on the trailer. In 1975 petitioner paid $497.55 state and local income taxes, $78 in gasoline taxes and $107 in general sales taxes.
In 1974 petitioner had two automobile accidents which were totally compensated for by insurance except, in each case, for the $100 deductible. In 1975 petitioner had two casualty losses and a theft loss of a CB radio for which he had paid $133. The following schedule shows the deductions by petitioner on his 1974 and 1975 Federal income tax returns for contributions, taxes, safety equipment, work accessories and small tools, casualty losses and travel expenses, the amount of these deductions disallowed by respondent in his notices of deficiency and the amount conceded either at trial or on brief by respondent to be deductible: Safety Equipment,
Work Accessories
Casualty
Travel
Contributions
Taxes
and Small Tools
Losses
Expenses
1974
Deducted by petitioner
on return
$1,050.00
$1,031.54
$165.40
$100.00
Disallowed by respondent
in notice of deficiency
1,050.00
252.60
165.40
100.00
Conceded by respondent
at trial or on brief
325.00
921.44
128.85
0
1975
Deducted by petitioner
on return
$1,015.00 $ 773.15
$447.84
$280.89
$2,545.64
Disallowed by respondent
in notice of deficiency
1,015.00
87.60
440.86
280.89
2,545.64
Conceded by respondent
at trial or on brief
800.00
765.55
315.15
0
0
*454 In his petition, other than a general allegation that respondent erred in the amount of tax and addition to tax computed and in the disallowance of expense deductions, all petitioner's allegations dealt with petitioner's constitutional rights under the 1st, 4th, 5th, 6th, 7th, 8th, 9th, 10th and 13th Amendments, the constitutionality of the income tax laws, a demand for a jury trial and the constitutionality of this Court. When the case was called for trial, respondent had prepared for filing a motion for summary judgment in which he stated that the only error alleged in the petition was the raising of constitutional issues similar to issues previously decided by this Court contrary to petitioner's position. Petitioner stated that he had records available which would establish errors in the deductions disallowed by respondent. Petitioner stated that he wished to proceed to trial with respect to the correctness of the various deductions disallowed by respondent.Respondent did not object to this procedure on the ground that the allegations in the petition were insufficient to permit petitioner to substantiate various deductions, which were disallowed by respondent primarily for *455 lack of substantiation, and changed the motion he planned to file to a motion for partial summart judgment with respect to the issue concerning petitioner's various allegations as to his constitutional rights and right to a jury trial. The Court heard the case with respect to the factual issues as to petitioner's entitlement to the various deductions claimed and took under advisement respondent's motion for partial summary judgment with respect to the other issues raised in the petition. OPINION Respondent in this case filed a brief dealing with the issue of petitioner's substantiation of various deductions claimed and relied on the memorandum he had filed in support of his motion for partial summary judgment in connection with the other issues. Petitioner's brief was confined totally to issues other than the issues of substantiation of claimed deductions. As best we can judge from the petition and petitioner's brief, petitioner is contending that the 16th Amendment to the Constitution only authorizes an income tax on corporations as distinguished from natural persons, that this Court is not a constitutional court, that he received no money in the years here involved since *456 he received no gold and silver but merely bank notes and checks, and that the provision for the determination of a deficiency by respondent, placing on petitioner the necessity of proving error in that determination, violates many of his constitutional rights. Although petitioner does not precisely spell out how his constitutional rights are violated, in many cases involving various claims we have ruled, contrary to the contentions made by petitioner herein, that the income tax is a constitutional tax, that the provisions for a determination of deficiency by respondent are constitutional, that this Court is a constitutional court, and that a taxpayer is not entitled to a jury trial. See Cupp v. Commissioner,65 T.C. 68 (1975), affd. 559 F.2d 1207 (3d Cir. 1977); Hatfield v. Commissioner,68 T.C. 895 (1977); Gajewski v. Commissioner,67 T.C. 181 (1976); Burns, Stix Friedman & Co. v. Commissioner,57 T.C. 392 (1971). [2] The constitutionality of the income tax as it applies to individuals has been upheld in numerous cases. Tyee Realty Co. v. Anderson,240 U.S. 115 (1916); Brushaber v. Union Pac. R.R. Co.,240 U.S. 1 (1916); *457 Autenrieth v. Cullen,418 F.2d 586 (9th Cir. 1969). We have also held on numerous occasions that the contention that the Federal income tax is only applicable to receipts in gold and silver is without merit. Cupp v. Commissioner,supra;Hatfield v. Commissioner,supra.
We therefore grant respondent's motion for partial summary judgment. Our findings substantially dispose of the issues with respect to petitioner's substantiation of his claimed deductions. On the basis of the record we conclude that petitioner is entitled to deduct contributions in the total amount of $750 for 1974 and $800 for 1975; that he is entitled to deduct taxes of $957.44 for 1974 and $1,012.55 for 1975; that he is entitled to deduct for safety equipment, work accessories and small tools $164.10 for 1974 and $315.15 for 1975; and that he is entitled to no deduction for casualty losses or travel expenses for either of the *458 years here in issue. Our findings of fact dispose of the contribution issue. On the basis of this record, we determine that in addition to the taxes which respondent conceded to be allowable for each of the years here in issue petitioner substantiated a payment of $36 for sales tax on a second purchase of an automobile in 1974 and $330 of personal property tax on a trailer he purchased in 1975. Whereas petitioner showed total payment in 1975 to the Polk County Treasurer of $509 and respondent so stipulated, it is not possible from this record to determine whether the $179 license fee was in fact a deductible tax or some form of privilege payment which is nondeductible. Petitioner claimed that in addition to the $497.55 of state income tax withheld from his wages by Ace Construction Co., some state income tax was withheld in 1975 on the $235.92 paid to him by Westinghouse Electric Corp. for work he did for them in 1975. The Form W-2 filed with petitioner's 1975 return in which the employer is shown as Westinghouse Electric Corp. shows a withholding of Federal income tax and "FICA" tax, but no withholding of state income tax. The record was left open to permit petitioner to obtain *459 a corrected Form W-2 from Westinghouse Electric Corp. if in fact that corporation had withheld state income tax. Petitioner did not submit this information by the time allowed but rather chose to rely on his constitutional arguments. For 1974 we have determined that, in addition to the $128.85 which respondent conceded to be deductible by petitioner for safety equipment, work accessories and small tools, petitioner bought work boots that lasted less than a year at a cost of $35.25 and this item is deductible as necessary work clothes. Since neither of the casualty losses for which petitioner claimed deductions in 1974 constituted a loss in excess of $100 to petitioner, petitioner is entitled to no casualty loss deduction since section 165(c)(3) specifically provides that a casualty loss shall not be allowed to an individual except to the extent that the amount of the loss arising from each casualty is in excess of $100. With respect to the year 1975, petitioner stated that of the two casualty losses he claimed one amounted to only $89. Therefore, this loss did not meet the $100 limitation. Another of the losses concerned a CB radio stolen from petitioner. The record shows *460 that petitioner had paid $133 for the CB radio new, but according to petitioner's own estimate the fair market value of the radio at the time it was stolen was between $80 and $100. Since the amount of a theft loss cannot exceed the fair market value of the article stolen at the time of the theft, petitioner's loss of the CB radio does not meet the $100 limitation on casualty and theft losses. The other loss, according to petitioner's opening statement at the trial, was $107. Respondent stipulated that petitioner had a loss in this amount but did not concede that any portion of the loss was deductible. There is no testimony or other evidence in the record respecting the nature or circumstances of this claimed casualty loss. Therefore, we have no basis for determining whether the amount of this loss in excess of $100 is deductible. Petitioner testified with respect ot the necessity of travel in his business.On his return for 1974 petitioner took no deduction for unreimbursed travel expenses. At the trial he contended that his expenses in both 1974 and 1975 exceeded the $14-a-day reimbursement he received from his employer. However, he introduced no proof to substantiate this *461 fact. For the year 1975 petitioner deducted $2,545.64 of travel expenses. However, he introduced no evidence to substantiate the claimed deduction for these expenses. At the trial petitioner stated that he believed the $14-a-day reimbursement for travel expenses he received from his employer had been included on the Forms W-2 filed with his return as part of the designation "Wages, salaries, tips and other employee compensation." There was nothing on the W-2 forms filed with petitioner's returns to substantiate this contention. Since it appears that the $14-a-day reimbursement received by petitioner, if included in his income, might be excludable therefrom under respondent's rulings, the record was left open to enable petitioner to obtain information from his employer as to whether the $14-a-day reimbursement was included in his wages as reported on the Forms W-2. When petitioner obtained the information, counsel for respondent agreed that it would be submitted to the Court by stipulation. However, no such further information was forthcoming from petitioner by the date allowed by the Court for submission of this information, petitioner rather choosing in his brief to rely on *462 his constitutional issues. Any portion of petitioner's claimed travel expenses for 1975 which consisted of expenses of driving his automobile to places outside Des Moines would not be deductible, since he drove rather than accept the transportation furnished by his employer for personal rather than business reasons. We therefore conclude that petitioner has failed to substantiate any of his claimed deductions for travel expenses in either 1974 or 1975. Decision will be entered under Rule 155. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated.↩
2. In our Memorandum Opinion in Silman v. Commissioner,T.C.Memo. 1978-266↩, we ruled contrary to petitioner's contentions in this case on issues substantially the same as those here presented by petitioner.