MARVIN S. ANTELMAN AND SYLVIA J. ANTELMAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Antelman v. Commissioner
Docket No. 2005-77.
United States Tax Court
T.C. Memo 1981-511; 1981 Tax Ct. Memo LEXIS 231; 42 T.C.M. (CCH) 1082; T.C.M. (RIA) 81511; September 15, 1981. *231 Petitioners have failed to (1) answer respondent's interrogatories, and (2) stipulate to facts not reasonably considered to be in dispute, despite two orders of the Court directing them to do so or to show cause why sanctions should not be imposed; they have failed to show cause therefor. Held: Petitioners' failures constitute a default under the circumstances of this case. Respondent's motion to dismiss for lack of prosecution is granted. Rules 104(c)(3), 123(a), 123(b), Tax Court Rules of Practice and Procedure.
Marvin S. Antelman, pro se. Charles W. Maurer, for the respondent. CHABOT
MEMORANDUM OPINION CHABOT, Judge: This proceeding is before us on respondent's motion to dismiss for lack of prosecution pursuant to Rules 104(c)(3)[1] and 123(b) and for disposition of our orders *232 dated March 26, 1980, and February 23, 1981, requiring petitioners to show cause why sanctions should not be imposed under Rule 104(c) for petitioners' failure to file written responses to respondent's interrogatories and for petitioners' refusal to stipulate to facts, documents, and evidence not reasonably considered to be in dispute. A hearing was held on respondent's motion and our show-cause orders, and the parties submitted memoranda in support of their respective positions. Respondent determined deficiencies in Federal individual income tax against petitioners for 1973 and 1974 in the amounts of $ 4,613.82 and $ 7,606.32, respectively. [2]
*233 When the petition in this case was filed, petitioners Marvin S. Antelman (hereinafter sometimes referred to as "Antelman") and Sylvia J. Antelman, husband and wife, resided in Newton, Massachusetts. The petition in this case was filed on March 4, 1977. On May 23, 1978, the Court granted the motion of petitioners' counsel to withdraw from the case. Since then, we have dealt with numerous procedural matters as a result of petitioners' persistent refusal to comply with our Rules. By order dated February 23, 1981, we directed petitioners to file written answers to respondent's interrogatories with the Court on or before March 4, 1981, or show cause on March 9, 1981, why sanctions should not be imposed pursuant to Rule 104(c), [3] and we directed the parties to submit to the Court a stipulation of facts at the call of the calendar on March 9, 1981. Previously, by order dated March 26, 1980, we had directed petitioners to file with the Court written answers to respondent's interrogatories and a stipulation of facts, but the showcause hearing thereon was continued because of petitioners' appeal from another part of this March 26, 1980, order, denying petitioners' motions for summary *234 judgment or dismissal. [4] We have informed petitioners on several occasions that their failure to answer respondent's interrogatories and to stipulate to facts may result in dismissal of their case for default. *235 This case was scheduled for trial and for hearing on our show-cause orders at the Court's Boston, Massachusetts, trial session beginning on March 9, 1981.We also had before us respondent's motion to dismiss for lack of prosecution filed on February 26, 1981. On March 2, 1981, petitioners lodged with the Court a document entitled "Petitioners' Constitutional Claims and Disclaimer of Unlawful Equity Jurisdiction" and a memorandum of law in support thereof. Petitionrs have not complied with our orders dated March 26, 1980, and February 23, 1981; they have not answered respondent's interrogatories; they have not stipulated to facts, documents, and evidence not reasonably considered to be in dispute; and they have not shown cause therefor. Under the circumstances of this case, we conclude that petitioners' conduct constitutes a default under Rule 123(a)[5] and that the dismissal of the case for failure properly to prosecute as a result of petitioners' failure to comply with our Rules and the Court's specific orders is an appropriate sanction under Rules 104(c)(3) and 123(b). [6]Miller v. Commissioner,     F.2d     (CA8 July 23, 1981), affg. per curiam an order of this *236 Court; Eisele v. Commissioner, 580 F.2d 805 (CA5 1978), affg. per curiam an order of this Court; McCoy v. Commissioner, 76 T.C.     (June 15, 1981). *237 Petitioners maintain that their refusals to answer respondent's interrogatories and to stipulate are justified by various common law and constitutional claims. Petitioners' claims include the following: (1) that the Tax Court is unconstitutional and void; (2) that the burden of proof has unconstitutionally been placed on them in violation of the Fifth Amendment; (3) that they have been deprived of their right to a jury trial under the Seventh Amendment; (4) that the notice of deficiency is unconstitutional (and violates the Act of Congress of April 2, 1792) because it was based on "fiat paper bank notes and bank credit" instead of silver or gold; (5) that the deficiency and assessment procedure in the Internal Revenue Code is unconstitutional, that respondent is seeking to impose an unconstitutional direct tax, and that the United States does not have the power to impose an income tax on individuals; (6) that respondent committed invidious religious discrimination in administering the tax laws; (7) that the proposed assessment amounts to an unconstitutional imposition of a bill of attainder; (8) that requiring petitioners to stipulate as to facts violates the Fifth Amendment; and *238 (9) that respondent's reexamination of petitioners' tax returns before examining all other taxpayers in the United States is unconstitutional. We have already rejected many of these same arguments in earlier proceedings in this case and are not contrarily persuaded now. Furthermore, petitioners' claims have been fully discussed--and consistently rejected--in numerous prior opinions of this Court and others, and we have been given no persuasive reason to depart from the analyses of these cases. E.g., Stix Friedman & Co., Inc. v. Coyle, 467 F.2d 474 (CA8 1972); Burns, Stix Friedman & Co. v. Commissioner, 57 T.C. 392 (1971) (the Tax Court is constitutional under articles I and III); Rockwell v. Commissioner, 512 F.2d 882, 887 (CA9 1975), affg. a Memorandum Opinion of this Court; [7]Roberts v. Commissioner, 62 T.C. 834, 838 (1974) (burden of proof); McCoy v. Commissioner, supra (self-incrimination); Swanson v. Commissioner, 65 T.C. 1180 (1976) (jury trial); Cupp v. Commissioner, 65 T.C. 68, 80-81 (1975), affd. without published opinion 559 F.2d 1207 (CA3 1977) *239 (income not paid in gold or silver); Brushaber v. Union Pac, R.R., 240 U.S. 1 (1916) (constitutionality of the Federal income tax laws generally); Miller v. Commissioner, supra (requirement of stipulations); Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974) (tax return selection). As to petitioners' claim of religious discrimination, we conclude that there is no adequate basis in the record for believing that the Federal income tax laws are being applied differently to petitioners than to other taxpayers, because of petitioners' religious affiliations or beliefs. As to petitioners' claim that the proposed assessment constitutes a bill of attainder, we conclude that there is no basis for the claim. A bill of attainder is a legislative act that applies to named individuals, or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial. United States v. Lovett, 328 U.S. 303, 315 (1946). See generally Congressional Research Service of the Library of Congress, The Constitution of the United States of America: Analysis *240 and Interpretation, S. Doc. 92-82, pp. 365-368 (1973). We note in connection with petitioners' Fifth Amendment self-incrimination claims that respondent's counsel advised us at the hearing that there is no proposed or pending criminal tax investigation or proceeding against petitioners for the years 1972, 1973, 1974, and 1975.At the hearing, Antelman refused to furnish the Court with any basis for petitioners' self-incrimination fears. [8] In their memorandum of law filed after the hearing, petitioners bring to our attention six administrative summonses issued by the Internal Revenue Service for the purpose of obtaining the records of Tilaco Chemicals Ltd. (Antelman shown thereon as president) for 1977 through 1980. These summonses are irrelevant to the instant case. We conclude that petitioners have no reasonable basis for fearing that their answers to respondent's interrogatories or their stipulations would tend to incriminate them. *241 Petitioners also assert that the notice of deficiency is arbitrary and not based on fact. By asserting that there is no factual basis for the notice of deficiency, petitioners are, in essence, asking the Court to "look behind" the notice of deficiency. This Court proceeds on the basis of the notice of deficiency and a trial de novo (e.g., Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 327), and we see no compelling reason to depart from this practice in the instant case. We recognize that dismissal of petitioners' case is the most severe sanction available under our Rules, short of punishment for contempt of Court. [9] We are convinced that this sanction is appropriate in view of petitioners' persistent refusal to comply with our Rules and orders and the roadblocks they have erected to prevent the instant case from proceeding toward trial of the substantive issues presented in the pleadings (see note 2, supra). Because of concessions by respondent (see note 2, supra), petitioners' *242 deficiencies are redetermined to be $ 4,158.26 for 1973 and $ 5,397.56 for 1974. See section 7459(d), I.R.C. 1954. An appropriate order granting respondent's motion to dismiss for lack of prosecution, and decision, will be entered. Footnotes
1. Unless indicated otherwise, all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent concedes the adjustments in the notice of deficiency relating to business expenses ($ 2,607 for 1974) and charitable contributions ($ 1,627 for 1973 and $ 3,870 for 1974). The substantive issues remaining after respondent's concessions relate to whether royalty payments received by petitioner Marvin S. Antelman are entitled to long-term capital gain treatment and whether petitioners must include in gross income amounts paid in 1973 on behalf of petitioners' minor children by Tivian Laboratories, Inc.↩
3. RULE 104. ENFORCEMENT ACTION AND SANCTIONS (c) Sanctions: If a party * * * fails to obey an order made by the Court with respect to the provisions of Rule 71, 72, 73, 74, 81, 82, 83, 84, or 90, the Court may make such orders as to the failure as are just, and among others the following: (1) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the case in accordance with the claim of the party obtaining the order. (2) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence. (3) An order striking our pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the case or any part thereof, or rendering a judgment by default against the disobedient party.
(4) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of the Court the failure to obey any such order. ↩
4. Petitioners' appeal from our March 26, 1980, order was dismissed by the Court of Appeals for the First Circuit on April 17, 1980, as interlocutory and nonappealable.↩
5. RULE 123. DEFAULT AND DISMISSAL (a) Default: When any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, he may be held in default by the Court either on motion of another party or on the initiative of the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104↩) as the Court may deem appropriate. The Court may, in its discretion, conduct hearings to ascertain whether a default has been committed, to determine the decision to be entered or the sanctions to be imposed, or to ascertain the truth of any matter.
6. RULE 123. DEFAULT AND DISMISSAL (b) Dismissal: For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. The Court may, for similar reasons, decide against any party any issue as to which he has the burden of proof; and such decision shall be treated as a dismissal for purposes of paragraphs (c) and (d) of this Rule.↩
7. T.C. Memo. 1972-133↩.
8. The following colloquy occurred at the hearing after respondent advised the Court about the absence of criminal investigations: THE COURT: Mr. Antelman, one question that I have of you at this point. Is there any evidence that you can give us that will bear directly on the question of the reasonableness of your concern that a statement that you make, evidence you present in this proceeding, would be used against you in a criminal prosecution? MR. ANTELMAN: I don't think that is the only issue. THE COURT: I haven't suggested that that's the only issue. MR. ANTELMAN: Okay. THE COURT: I'm asking you a question to be sure that you have had an opportunity to present us with something. You've made your statement. Nevertheless, I want to get this additional point in. If there is something, I'd like to hear it. MR. ANTELMAN: I feel under no obligation to state anything further, and I think that I have stated very, very well in our memorandum of law that we have in our original claim, Your Honor, that -- hold on. (Pause.) MR. ANTELMAN: Essentially, that we owe -- we have not done anything wrong and we owe the public no obligation about anything concerning our private affairs. And I think that says enough. THE COURT: Very well. MR. ANTELMAN: Thank you.↩
9. See in this connection United States v. Tivian Laboratories, Inc., an unreported case ( D. R.I. 1981, 47 AFTR 2d 81↩-1256, 81-1 USTC par. 9357).