HARRIETT A. DONER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Doner v. Commissioner
Docket No. 30471-81.
United States Tax Court
T.C. Memo 1984-528; 1984 Tax Ct. Memo LEXIS 140; 48 T.C.M. (CCH) 1276; T.C.M. (RIA) 84528; October 3, 1984. *140 George W. Shaffer, for the petitioner. Warren P. Simonsen, for the respondent. TANNENWARD MEMORANDUM OPINION TENNENWALD, Judge:Respondent determined a deficiency of $12,066 in petitioner's Federal income tax for the calendar year 1978. The sole question before us is the proper treatment of a lump-sum payment of annuity arrearages received by petitioner from the United States Department of the Navy as the widow of her deceased husband. All of the facts have been stipulated and are found accordingly. Petitioner was a resident of McLean, Va., at the time she filed her petition herein. She is the widow of a former United States naval officer, Captain Landis Doner. Captain Doner was a member of the United States Navy who was on active duty from March 1941 through July 10, 1966. Captain Doner died on July 15, 1966. At the time of his death, he was considered by the United States Department of the Navy as having a status such as would not have originally provided petitioner with an annuity. Immediately thereafter, petitioner sought a correction of Captain Doner's records, and she continued to seek a change in records until 1978, when the Navy *141 finally determined that Captain Doner should have been placed, prior to his death, on the temporary disability retired list in the grade of captain. As a result of that determination, petitioner was entitled to an annuity for the years 1966 through 1978 and continuing thereafter. Petitioner received a check in 1978 from the United States Navy in the amount of $43,826.82 as a lump sum payment for settlement of her claim under the "survivor's annuity plan." In computing her tax for 1978, petitioner prorated the lump-sum payment over the years during which she would have received her annuity had the Navy Department correctly determined her husband's status at the time of his death and paid her tax for 1978 accordingly. Respondent determined that such proration was incorrect and that the lump-sum payment should have been treated as income in its entirety for 1978. Respondent has stipulated that petitioner is entitled to the benefit of income averaging and that, if his position herein is sustained, the amount of the deficiency for 1978 should be $3,590. [1]
Petitioner's position is that *142 her proration of the 1978 lump-sum payment was correct and that to require her to pay any further amount of tax would have the effect of permitting the government to profit from its own mistake. Respondent's position is that, if we were to agree with petitioner's contention, this Court would simply be "doing equity," which is not within its jurisdiction to accomplish. For the reasons hereinafter stated, we conclude, with great reluctance, that respondent is correct. Initially, we observe that this Court traditionally has not had equity jurisdiction. Pesch v. Commissioner,78 T.C. 100, 130-131 (1982). However, we have implied that, despite this traditional view, this Court has jurisdiction to apply the doctrine of equitable estoppel, under applicable circumstances, although in almost every instance we have found that the taxpayer has not satisfied the conditions precedent to its application against respondent. [2] See, e.g., Boulez v. Commissioner,76 T.C. 209, 214-217 (1981), on appeal (D.C. Cir., Dec. 2, 1981); Graff v. Commissioner,74 T.C. 743, 760-765 (1980), affd. per curiam 673 F.2d 784 (5th Cir. 1982). *143 Schwartz v. Commissioner,40 T.C. 191 (1963). See also Dubroff, The United States Tax Court -- An Historical Analysis (1979), p. 493, reprinted from 42 Albany L. Rev. 451 (1978); Lynn and Gerson, "Quasi-Estoppel and Abuse of Discretion as Applied Against the United States in Federal Tax Controversies," 19 Tax L. Rev. 487, 516-520 (1964). Unfortunately for petitioner, the doctrine of equitable estoppel does not apply to her situation. The respondent has at no time made any misrepresentation of any fact and it is difficult to find any misrepresentation by the Navy Department, albeit that it made a mistake. Nor can it be contended that petitioner relied upon any misrepresentation even if there had been one; she contested the Navy Department's position every inch of the way. To be sure, she has suffered a detriment as a result of the *144 Navy Department's mistake in the form of paying higher taxes than she otherwise would have had to pay, but that detriment does not involve any double taxation, which has sometimes caused the courts to estop respondent. See, e.g., Vestal v. Commissioner,152 F.2d 132, 135-136 (D.C. Cir. 1945), revg. Chilhowee Mills, Inc. v. Commissioner,4 T.C. 558 (1945). In short, petitioner has not satisfied the essential preconditions to invoking equitable estoppel. Graff v. Commissioner,supra at 761. We are thus remitted to a consideration of whether we nevertheless have jurisdiction to decide this case on general principles of equity. If we follow the traditional view (see p. 4, supra), we would have to hold that we do not have such jurisdiction. Although most of the decided cases antedate the passage of the Tax Reform Act of 1969, Pub. L. 91-172, 83 Stat. 487, which constituted the Tax Court as a legislative court under Article I of the Constitution, the current view seems to be that the 1969 legislation did not effectuate any change in this Court's status insofar as equity jurisdiction is concerned. Continental Equities, Inc. v. Commissioner,551 F.2d 74, 82-83 (5th Cir. 1977), *145 revg. on other grounds T.C. Memo. 1974-189, a case involving equitable recoupment of taxes paid by another taxpayer. [3] We leave for another day the question whether we should fully apply the views of the Fifth Circuit in Continental Equities where actions by respondent not involving equitable recoupment are involved. The fact of the matter is that the situation herein does not involve a mistake on respondent's part, but rather one of another department of the Federal government. Cf. Graff v. Commissioner,supra at 762-763. [4] That petitioner formulates her request for relief in terms of equity cannot obscure the fact that that she is really seeking is tax relief resulting from a mistake by the Department of the Navy relating to a non-tax matter. In essence, petitioner is asserting a claim for damages against the Navy Department by way of an offset against her tax liability otherwise clearly mandated by the Internal Revenue Code, such damages to be measured by the increased taxes she has been called upon to pay because of the Navy's mistake. *146 We are satisfied that we should not assume jurisdiction to decide the question of the Navy Department's liability, if any, [5] for damages, much less that we should apply the general equitable principle asserted by petitioner that the Federal government should not be permitted to profit from its mistakes. Venturing into the field of offsets against tax liabilities on general equitable grounds would involve this Court in a host of situations involving actions by various departments and agencies of the Federal government which impact tax liabilities. [6] The numerous cases relied upon by petitioner either do not involve tax matters or the jurisdiction of this Court or contain language which supports petitioner only if taken out of context. *147 Perhaps petitioner has a remedy to recover damages against the Navy Department in a separate action in the Claims Court or a United States district court, although we express no opinion as to whether any such remedy can be successfully pursued. If this path to relief is not available, petitioner's only choice [7] would appear to be to seek relief in "the halls of Congress." See Hays Corp. v. Commissioner,40 T.C. 436, 443 (1963), affd. 331 F.2d 422 (7th Cir. 1964). *148 In view of the parties' stipulation, Decision will be entered for the respondent that there is a deficiency of $3,590 in petitioner's Federal income tax for the taxable year 1978.
[8]
Footnotes
1. Petitioner paid this additional amount after the petition herein was filed.↩
2. The interplay between the application of the doctrine of equitable estoppel and the equity jurisdiction of the Court has its slippery aspects. See Dubroff, The United States Tax Court -- An Historical Analysis (1979), pp. 483-493, reprinted from 42 Albany L. Rev. 441↩-451 (1978).
3. See also Purdy v. Commissioner,T.C. Memo. 1982-652, where equitable recoupment of taxes paid by another taxpayer was also involved and we indicated our acceptance of that portion of the opinion in Continental Equities dealing with equitable recoupment, an issue which we did not reach in that case. The question of the impact of the Tax Reform Act of 1969 was not addressed in Pesch v. Commissioner,78 T.C. 100 (1982), or in Graham v. Commissioner,75 T.C. 389 (1980). See also Hintz v. Commissioner,712 F.2d 281, 285 (7th Cir. 1983), affg. T.C. Memo. 1981-425; Egan v. Commissioner,T.C. Memo. 1976-351. In Burns, Stix Friedman & Co. v. Commissioner,57 T.C. 392, 396-397↩ (1971), we discussed the impact of the Tax Reform Act of 1969, but only in the context of deciding whether Congress had the power to constitute the Tax Court as an Article I court. 4. Cf. also Graham v. Commissioner,75 T.C. 389, 399↩ (1980), where we took the position that we did not have jurisdiction to determine whether the taxpayer's Federal income tax liabilities had been discharged in bankruptcy.
5. The record herein is insufficient in terms of the circumstances surrounding the mistake and rectification thereof by the Navy Department to permit us to decide this question, even if we were to conclude that we had jurisdiction.↩
6. Cf. Lewicki v. Commissioner,T.C. Memo. 1974-86. Compare Estate of Pfohl v. Commissioner,69 T.C. 405↩ (1977), where action by the Bureau of Public Debt directly affected the value of bonds includable in the decedent's gross estate.
7. It is also possible that, in the event of an appeal of our decision herein, a circuit court of appeals (which, as an Article III court, has broad equity powers), may decide to exercise its equity jurisdiction to sustain petitioner's position; in the past, circuit courts of appeal have done just that. See, e.g., Vestal v. Commissioner,152 F.2d 132 (D.C. Cir. 1945), revg. Chilhowee Mills, Inc. v. Commissioner,4 T.C. 558 (1945); Joseph Eichelberger & Co. v. Commissioner,88 F.2d 874 (5th Cir. 1937), revg. a Memorandum Opinion of this Court. But see Taylor v. Commissioner,258 F.2d 89, 93 (2d Cir. 1958), affg. 27 T.C. 361 (1956); Vandenberge v. Commissioner,147 F.2d 167 (5th Cir. 1945), affg. 3 T.C. 321 (1944); Lynn and Gerson, "Quasi-Estoppel and Abuse of Discretion as Applied Against the United States in Federal Tax Controversies," 19 Tax L. Rev. 487, 518-519↩ (1964).
8. See n. 1, supra. ↩