148 T.C. No. 2

UNITED STATES TAX COURT

STANLEY BATTAT AND ZMIRA BATTAT, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17784-12.                         Filed February 2, 2017.

Ps filed a motion to disqualify all Tax Court Judges and to
declare unconstitutional I.R.C. sec. 7443(f), which authorizes the
President to remove Tax Court Judges "after notice and opportunity
for public hearing, for inefficiency, neglect of duty, or malfeasance in
office, but for no other cause."

In the Tax Reform Act of 1969 (1969 Act), Pub. L. No. 91-172,
sec. 951, 83 Stat. at 730, Congress deleted from I.R.C. sec. 7441 the
designation of the Tax Court as an independent agency within the
executive branch. In 1971 we said that under the 1969 Act the Tax
Court is no longer within the executive branch. <u>Burns, Stix Friedman
& Co. v. Commissioner</u>, 57 T.C. 392 (1971). Ps also adopt the view
that the Tax Court is not within the executive branch and contend
that, as a result, the President's limited removal authority violates
separation of powers principles. In <u>Kuretski v. Commissioner</u>,
755 F.3d 929 (D.C. Cir. 2014), the Court of Appeals held that the Tax
Court is within the executive branch. The following year Congress

amended I.R.C. sec. 7441 because of concerns about statements made by the Court of Appeals in Kuretski.

Held: Under the Rule of Necessity, it is proper for a Tax Court Judge to rule on Ps' contention that I.R.C. sec. 7443(f) is unconstitutional.

Held, further, Presidential authority to remove Tax Court Judges for cause does not violate separation of powers principles. We so hold because, while Tax Court Judges exercise a portion of the judicial power of the United States, Freytag v. Commissioner, 501 U.S. 868, 890-891 (1991), its Judges exercise no portion of the judicial power reserved to Article III judges. Thus, Presidential removal authority cannot interfere with the Article III judicial power regardless of the Tax Court's placement in the branches of Government.

Held, further, Ps' motion will be denied.

Joseph A. DiRuzzo, III, Jennifer Correa Riera, Christopher J. Rajotte, and Jeffrey J. Molinaro, for petitioners.

Brian A. Pfeifer, for respondent.

OPINION

COLVIN, Judge:  This deficiency case[1] is before the Court on petitioners'
motion to disqualify all Tax Court Judges (filed as a motion for recusal of Judge)
and to declare section 7443(f)[2] unconstitutional.  For reasons discussed below we
will deny petitioners' motion.

In the Background section, we describe:  (A) procedures for the removal of
Tax Court Judges; (B) statutory provisions governing the Tax Court and the
Supreme Court's opinion in Freytag v. Commissioner, 501 U.S. 868, 891 (1991);
(C) caselaw relating to the jurisprudence and status of the Tax Court; and (D)
Kuretski v. Commissioner, 755 F.3d 929, 943-945 (D.C. Cir. 2014), aff'g T.C.
Memo. 2012-262, and the congressional response to Kuretski.  In the Discussion
section, we conclude that:  (A) under the Rule of Necessity, it is proper for a Tax
Court Judge to rule on petitioners' motion; (B) procedures for the removal of Tax
Court Judges for cause do not violate separation of powers principles; and (C)

---

[1]Respondent determined a deficiency in petitioners' income tax for 2008 of
$1,722,175 and an addition to tax under sec. 6651(a)(1) and an accuracy-related
penalty under sec. 6662(a) of $82,337 and $344,435, respectively.

[2]Unless otherwise indicated, section references are to the Internal Revenue
Code, as amended.  Rule references are to the Tax Court Rules of Practice and
Procedure.

petitioners are not entitled to a remedy on the basis of an appearance of bias.

Finally, at Part D we provide a conclusion.

Background

Petitioners resided in Florida when they filed the petition.

A.   Procedures for the Removal of Tax Court Judges

Section 7443(f) authorizes the President to remove Judges of the Tax Court "after notice and opportunity for public hearing, for inefficiency, neglect of duty, or malfeasance in office, but for no other cause". The predecessor of section 7443(f) was first enacted as part of the Revenue Act of 1924 (1924 Act), ch. 234, sec. 900(b), 43 Stat. at 336-337.[3]

In 2015 Congress extended the judicial conduct and disability procedures of 28 U.S.C secs. 351-364 (2012), to Judges of the Tax Court. Consolidated Appropriations Act, 2016 (2015 Act), Pub. L. No. 114-113, sec. 431, 129 Stat. at 3125 (2015) (adding section 7466). Under section 7466 and 28 U.S.C. sec. 355, if the Judicial Conference of the United States (Judicial Conference)[4] determines that

---

[3]In 1926 the Presidential removal provision was amended to include the phrase "after notice and opportunity for public hearing". Revenue Act of 1926 (1926 Act), ch. 27, sec. 1000, 44 Stat. at 105-106.

[4]The Judicial Conference of the United States is the national policymaking body for the Federal courts. 28 U.S.C. sec. 331 (2012).

there are grounds for removal of a Tax Court Judge under section 7443(f), then the Judicial Conference shall transmit the determination to the President. See Part B, infra p. 22.

B.      Statutory Provisions Relating to the Establishment and Status of the Tax Court

    1.      1924 to 1968

Congress created the Board of Tax Appeals in 1924 to permit taxpayers to challenge determinations made by the Internal Revenue Service (IRS) of their tax liabilities before payment.[5] The Revenue Act of 1924 provided that "[t]here is hereby established a board to be known as the Board of Tax Appeals" and "[t]he Board shall be an independent agency in the executive branch of the Government." Revenue Act of 1924, ch. 234, sec. 900(a), (k), 43 Stat. at 336, 338 (emphasis added).

In 1926 Congress made various statutory changes with respect to the Board of Tax Appeals, but the statute continued to provide that the Board of Tax Appeals is "an independent agency in the Executive Branch of the Government." Revenue Act of 1926, ch. 27, sec. 900, 44 Stat. at 105-106 (emphasis added). In 1939

_____

    [5]Before 1924 taxpayers who wished to contest a determination made by the Bureau of Internal Revenue (now the IRS) were required to pay the tax assessed and then file suit against the Government for a refund. See Flora v. United States, 362 U.S. 145, 151-152 (1960).

"[t]he Board of Tax Appeals * * * shall be continued as an <u>independent agency in the Executive Branch the of Government</u>" (emphasis added) was codified in the Internal Revenue Code of 1939, ch. 2, sec. 1100, 53 Stat. at 158. In 1942 Congress changed the name of the Board of Tax Appeals to the "Tax Court of the United States." After amendment by the Revenue Act of 1942, ch. 619, sec. 504(a), 56 Stat. at 957, section 1100 of the 1939 Code provided as follows:

> The Board of Tax Appeals * * * shall be continued as <u>an independent agency in the Executive Branch of the Government</u>. The Board shall be known as the Tax Court of the United States and the members thereof shall be known as the presiding judge and the judges of the Tax Court of the United States. [Revenue Act of 1942, ch. 619, sec. 504(a), 56 Stat. at 957; emphasis added.]

That provision was also included in section 7441 of the Internal Revenue Code of 1954, which provided as follows:

> The Board of Tax Appeals shall be continued as <u>an independent agency in the Executive Branch of the Government</u>, and shall be known as the Tax Court of the United States. The members thereof shall be known as the chief judge and the judges of the Tax Court." [Internal Revenue Code of 1954, ch. 76, sec. 7441, 68A Stat. at 879; emphasis added.]

In <u>Dobson v. Commissioner</u>, 320 U.S. 489 (1944), the Supreme Court held that, because the Tax Court was (at that time) an administrative body within the executive branch, decisions of the Tax Court on questions of fact were not reviewable if supported by any evidence in the record. <u>Dobson</u> was legislatively

overturned in 1948 by an amendment to section 7482(a)(1) requiring the U.S. Courts of Appeals "to review * * * the Tax Court [decisions] * * * in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury".  Act of June 25, 1948, ch. 646, sec. 36, 62 Stat. at 991.[6]

2.    Tax Reform Act of 1969

In the Tax Reform Act of 1969 (1969 Act), Pub. L. No. 91-172, 83 Stat. 487, Congress "transformed" the Tax Court, Freytag v. Commissioner, 501 U.S. at 890-891, through two amendments to section 7441.  First, Congress amended section 7441 to designate the Tax Court as an Article I court.  As a result, section 7441 provided:  "There is hereby established, under Article I of the Constitution of the United States, a court of record to be known as the United States Tax Court. The members of the Tax Court shall be the chief judge and the judges of the Tax Court." 1969 Act sec. 951, 83 Stat. at 730.  Second, Congress amended section

---

[6]It is now well established that the Tax Court's findings of fact (like those of the U.S. District Courts) are accepted by the Courts of Appeals unless clearly erroneous.  Dreicer v. Commissioner, 665 F.2d 1292, 1296 n.36 (D.C. Cir. 1981) (citing sec. 7482(a) and Commissioner v. Duberstein, 363 U.S. 278, 291 n.13 (1960)), rev'g T.C. Memo. 1979-395.

7441 to delete the designation of the Tax Court as an "independent agency in the

Executive Branch of the Government".[7]

In its report accompanying the 1969 Act,[8] the Senate Committee on Finance

said:

> Since the Tax Court has only judicial duties, the committee believes it is anomalous to continue to classify it with quasi-judicial executive agencies that have rulemaking and investigatory functions. * * * [I]ts constitutional status as an executive agency, no matter how independent, raises questions in the minds of some as to whether it is appropriate for one executive agency [the pre-1969 tribunal] to be sitting in judgment on the determinations of another executive agency [the IRS].

---

[7]The statute as it existed until 1969, providing that the Tax Court was part of the executive branch, was in keeping with the general understanding of the branch location of independent agencies. See, e.g., FMC v. S.C. State Ports Auth., 535 U.S. 743, 773 (2002) (Breyer, J., dissenting) (independent agencies are "appropriately considered to be part of the Executive Branch").

[8]Despite having observed that the meaning of a statute does not turn on the intent of individual lawmakers but "only on what intent has been enacted into law through the constitutionally defined channels of bicameralism and presentment", Teva Pharms. USA, Inc. v. Sandoz, Inc., 574 U.S. ___, ___, 135 S. Ct. 831, 845 (2015), the Supreme Court continues to refer to legislative history, see, e.g., Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n, 576 U.S. ___, ___, 135 S. Ct. 2652, 2669 (2015); United States v. Kwai Fun Wong, 575 U.S. ___, ___, 135 S. Ct. 1625, 1632 (2015); Yates v. United States, 574 U.S. ___, ___, 135 S. Ct. 1074, 1084 (2015); Warger v. Shauers, 574 U.S. ___, ___ , 135 S. Ct. 521, 527 (2014); Samantar v. Yousef, 560 U.S. 305, 316 n.9 (2010) ("Our precedents demonstrate that the Court's practice of utilizing legislative history reaches well into its past. * * * 'We suspect that the practice will likewise reach well into the future'." (quoting Wis. Pub. Intervenor v. Mortier, 501 U.S. 597, 611-612 n.4 (1991))).

\* \* \* \* \* \* \*

The amendments are also concerned with making the Tax Court an Article I court rather than an executive agency and expanding its powers accordingly. \* \* \*

[S. Rept. No. 91-552, supra at 302-303, 1969-3 C.B. at 614-615; H.R. Conf. Rept. No. 91-782 (1969), 1969-3 C.B. 644, 645 ("The conference substitute \* \* \* follows the Senate amendment.").]

Thus, the Senate Committee on Finance intended that the Tax Court no longer be classified "with" executive branch agencies. S. Rept. No. 91-552, supra at 302, 1969-3 C.B. at 614.[9]

In 1969 Congress also amended section 7456 to provide Tax Court Judges with the "quintessentially judicial" power, Freytag v. Commissioner, 501 U.S. at 891, to punish contempt of court by fine or imprisonment and provided that the Tax Court has "such assistance in the carrying out of its lawful writ, process,

---

[9]The Tax Reform Act of 1969 (1969 Act), Pub. L. No. 91-172, sec. 961, 83 Stat. at 735-736, also provides:

The United States Tax Court established under the amendment made by section 951 is a continuation of the Tax Court of the United States as it existed prior to the date of enactment of this Act \* \* \* no loss of rights or powers, interruption of jurisdiction, or prejudice to matters pending in the Tax Court of the United States before the date of enactment of this Act shall result from the enactment of this Act.

See also H.R. Conf. Rept. No. 91-782, at 341 (1969), 1969-3 C.B. 644, 682. This provision prevented inconvenience to the parties and the public by ensuring the continuity of cases pending before the Tax Court. It did not diminish the constitutional significance of the establishment of the Tax Court under Article I. Burns, Stix Friedman & Co. v. Commissioner, 57 T.C. 392, 395 (1971).

order, rule, decree, or command" as is available to Article III judges,[10] 1969 Act sec. 956, 83 Stat. at 732 (amending section 7456); see 18 U.S.C. sec. 401 (2012).

As stated supra pp. 7-8, in the 1969 Act Congress deleted the designation of the Tax Court as an "independent agency in the Executive Branch of the Government". The only amendment needed if Congress had intended to establish the Tax Court as an Article I court located in the executive branch would have been deletion of the words "as an independent agency". If only those words had been deleted, section 7441 would have said the Tax Court "shall be continued * * * in the Executive Branch of the Government". But that is not what Congress did. Congress also deleted from section 7441 the words "in the Executive Branch of the Government". That additional change would have been superfluous if Congress had intended for the Tax Court to remain within the executive branch. The deletion of words is properly considered in determining the meaning of

---

[10]U.S. Const. art. III, sec. 1 provides:

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office.

statutes.  See, e.g., United States v. Wells, 519 U.S. 482, 492-493 (1997).[11]  Thus, the 1969 Act can fairly be read to mean that Congress intended to terminate the Tax Court's previously well-understood placement in the executive branch.  Soon after the enactment of the 1969 Act, the Tax Court faced a challenge to the constitutionality of its exercise of judicial powers as an Article I court.  In upholding the authority of the Tax Court as provided by the 1969 Act, we said:

> It is clear from the statutory language and the Senate Committee report * * * that Congress removed the Tax Court from the Executive Branch and established it as an article I court primarily for the purpose of recognizing its status as a judicial body and disposing of any problems that its status as an executive agency sitting in judgment on another executive agency might pose.  [Burns, Stix Friedman & Co. v. Commissioner, 57 T.C. 392, 395 (1971); citation omitted.]

Thus, soon after the repeal by the 1969 Act of the statute designating the Tax Court as within the executive branch, we observed that, under the 1969 Act, the Tax Court was no longer within the executive branch.

---

[11]In United States v. Wells, 519 U.S. 482, 493 (1977), the Supreme Court gave effect to the deletion by Congress of the word "materiality" from the statute at issue, reasoning that "[t]he most likely inference in these circumstances is that Congress deliberately dropped the term 'materiality'" so as to no longer make materiality a required element of the statute at issue.

3.     Freytag v. Commissioner

In Freytag v. Commissioner, 501 U.S. at 887-888, the Supreme Court

upheld the authority of the Chief Judge of the Tax Court under section 7443A(a)

to appoint Special Trial Judges[12] because the Chief Judge of the Tax Court is the

head of one of the "Courts of Law" and is not one of the "Heads of Departments"

for purposes of the Appointments Clause under Article II.[13]  In Freytag, the

Supreme Court observed that the Tax Court exercises a portion of the judicial

power of the United States, does not exercise "executive, legislative, or

administrative" power, "remains independent of the Executive and Legislative

Branches", and closely resembles U.S. District Courts in its function and role in

the Federal judicial scheme.  Id. at 890-892.  After concluding that the Tax Court

---

[12]The authority of Special Trial Judges in many respects resembles that of magistrate judges.  Sec. 7443A.

[13]The Constitution provides:

   [The President] * * * shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law:  but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.  [U.S. Const. art. II, sec. 2, cl. 2.]

can be a court of law under the Appointments Clause, id. at 888, the Supreme

Court went on to "define the constitutional status of the Tax Court and its role in

the constitutional scheme" by discussing in detail the statutes establishing the Tax

Court:

> Having concluded that an Article I court, which exercises judicial power, can be a "Cour[t] of Law" within the meaning of the Appointments Clause, we now examine the Tax Court functions to define its constitutional status and its role in the constitutional scheme. See Williams, 289 U.S. at 563-567. The Tax Court exercises judicial, rather than executive, legislative, or administrative, power. It was established by Congress to interpret and apply the Internal Revenue Code in disputes between taxpayers and the Government. By resolving these disputes, the court exercises a portion of the judicial power of the United States.
>
> The Tax Court exercises judicial power to the exclusion of any other function. It is neither advocate nor rulemaker. As an adjudicative body, it construes statutes passed by Congress and regulations promulgated by the Internal Revenue Service. It does not make political decisions.
>
> The Tax Court's function and role in the federal judicial scheme closely resemble those of the federal district courts, which indisputably are "Courts of Law." Furthermore, the Tax Court exercises its judicial power in much the same way as the federal district courts exercise theirs. It has authority to punish contempts by fine or imprisonment, 26 U.S.C. § 7456(c); to grant certain injunctive relief, § 6213(a); to order the Secretary of the Treasury to refund an overpayment determined by the court, § 6512(b)(2); and to subpoena and examine witnesses, order production of documents, and administer oaths, § 7456(a). All these powers are quintessentially judicial in nature.

The Tax Court remains independent of the Executive and Legislative Branches.  Its decisions are not subject to review by either the Congress or the President.  Nor has Congress made Tax Court decisions subject to review in the federal district courts.  Rather, like the judgments of the district courts, the decisions of the Tax Court are appealable only to the regional United States courts of appeals, with ultimate review in this Court.[14]  The courts of appeals, moreover, review those decisions "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury. § 7482(a).  This standard of review contrasts with the standard applied to agency rulemaking by the courts of appeals under § 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).  See Motor Vehicle Mfrs. Assn. v. State Farm Mut. Automobile Ins. Co., 463 U.S. 29, 43-44 (1983).

The Tax Court's exclusively judicial role distinguishes it from other non-Article III tribunals that perform multiple functions and provides the limit on the diffusion of appointment power that the Constitution demands. * * *

[Freytag v. Commissioner, 501 U.S. at 890-892.]

---

[14]Congress has recently reaffirmed this point.  Sec. 7482(b)(1)(F), enacted by the Consolidated Appropriations Act, 2016 (2015 Act), Pub. L. No. 114-113, div. Q, sec. 423, 129 Stat. at 3123 (2015), provides that spousal relief cases under sec. 6015 and collection cases under secs. 6320 and 6330 are appealable to the U.S. Court of Appeals for the circuit in which an individual resides.  The enactment of sec. 7482(b)(1)(F) reaffirms application of the general rule that Tax Court cases are appealable to the various Courts of Appeals with respect to spousal relief and collection cases, which are relatively new areas of Tax Court jurisdiction enacted in 1998.  Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. No. 105-206, secs. 3201 (spousal relief), 3401 (collection cases), 112 Stat. at 735-738, 746-749.  This amendment prospectively changes the result in Byers v. Commissioner, 740 F.3d 668 (D.C. Cir. 2014), aff'g T.C. Memo. 2012-27, which had held that collection cases are appealable to the U.S. Court of Appeals for the District of Columbia Circuit.

The Supreme Court rejected the Commissioner's characterization of the Tax Court as an entity other than a court.  Id. at 887-888 ("Treating the Tax Court as * * * [an executive branch] 'Department' * * * would defy * * * the clear intent of Congress to transform the Tax Court into an Article I legislative court.  The Tax Court is not * * * [an executive] 'Departmen[t].'").

The Supreme Court's analysis of the Tax Court in Freytag may be contrasted with its analysis of the Court of Appeals for the Armed Forces (until 1994 known as the U.S. Court of Military Appeals) in Edmond v. United States, 520 U.S. 651 (1997).  Both the U.S. Court of Appeals for the Armed Forces and the Tax Court are courts of record established under Article I, sec. 7441, 10 U.S.C. sec. 941 (2012), and the judges of both of those courts are subject to removal for cause by the President, 10 U.S.C. sec. 942(c); sec. 7443(f).  However, differences in the statutes governing those two Courts led the Supreme Court in Edmond to conclude that the Court of Military Appeals for the Armed Forces is within the executive branch and in Freytag to conclude that the Tax Court is independent of the executive branch.[15]  First, under 10 U.S.C. sec. 941, "for administrative

---

[15]Cf. Kuretski v. Commissioner, 755 F.3d 929, 944 (D.C. Cir. 2014) ("[T]he constitutional status of the Tax Court mirrors that of the Court of Appeals for the Armed Forces.  The statutes establishing the status of the two courts precisely parallel one another").

purposes" the Court of Appeals for the Armed Forces is, by statute, in the executive branch, specifically, the Department of Defense.[16] Edmond, 520 U.S. at 664 n.2. In contrast, the Tax Court's statutory link to the executive branch was repealed by the 1969 Act.[17]

---

[16]Congress made it clear that it did not intend for this phrase to undermine the judicial nature of the Court of Appeals for the Armed Forces. The House report accompanying the U.S. Court of Military Appeals Establishment Act states the following:

> One of the purposes of this bill is to make it abundantly clear in the law that the Court of Military Appeals is a court, although it is a court under article I of the Constitution. There has been some claim that the court, having been put under the Department of Defense for administrative purposes, is in effect an administrative agency. If it had such status, it would not be able to question any of the provisions of the Manual for Courts-Martial since the manual had been promulgated by Presidential order. The bill makes it clear that the Court of Military Appeals is a court and does have the power to question any provision of the manual or any executive regulation or action as freely as though it were a court constituted under Article III of the Constitution. [H.R. Rept. No. 90-1480, at 2 (1968), 1968 U.S.C.C.A.N. 2053, 2054; in substantial accord S. Rept. No. 90-806, at 1-2 (1968).]

[17]We also note that sec. 7441 (as amended in 2015, after release of the opinion of the Court of Appeals in Kuretski) provides that the Tax Court is independent of the executive branch, and, in contrast to administration by the executive branch, sec. 7470 (also enacted in 2015) authorizes the Tax Court to exercise the managerial, administrative, and financial authorities provided for the Article III courts.

Second, 10 U.S.C. sec. 946 (2012) requires judges of the Court of Appeals for the Armed Forces to meet annually with the Judge Advocates General and two members of the public appointed by the Secretary of Defense to "survey the operation" of the military justice system. Edmond, 520 U.S. at 664 n.2. This contrasts with the Tax Court, which "exercises judicial power to the exclusion of any other function", Freytag v. Commissioner, 501 U.S. at 891, and which has no statutory mandate to survey the operation of the IRS or any of its offices.[18] These statutory differences led the Supreme Court to conclude that the Tax Court is independent of the executive branch and the Court of Military Appeals for the Armed Forces is within the executive branch.

4.     Other Statutory Changes

The Ethics Reform Act of 1989, Pub. L. No. 101-194, sec. 601(a), 103 Stat. at 1760, 1761, provides that the Judicial Conference of the United States (Judicial Conference) is the supervising ethics authority for "officers and employees of the judicial branch". Tax Court Judges are included in the definitions of "judges" and

---

[18]Although not noted by the Supreme Court in Edmond, the statute establishing the Court of Appeals for the Armed Forces requires that not more than three judges of that court be from the same political party. See 10 U.S.C. sec. 942(b)(3) (2012). No similar provision applies to the appointment of Judges of the Tax Court.

"judicial officers".  Id. sec. 202, 103 Stat. at 1724, 1742.  The Judicial Conference

is the supervising ethics authority for Tax Court Judges and employees.[19]

From 2006 to 2015 several provisions were enacted which further distance

the Tax Court from any association with the executive branch and bolster the Tax

Court's "quintessentially judicial" powers and design.  Freytag v. Commissioner,

501 U.S. at 890.  In 2006 section 6214 was amended to permit the Tax Court to

apply the doctrine of equitable recoupment[20] to the same extent that it may be

applied in Federal civil tax cases by the U.S. District Courts or the U.S. Court of

Claims.  Pension Protection Act of 2006, Pub. L. No. 109-280, sec. 858, 120 Stat.

at 1020; S. Rept. No. 109-336, at 97 (2006).

---

[19]In 1985 the Tax Court formally adopted the Code of Conduct for United States Judges, thus confirming the widely held understanding that the Code of Conduct applies to Tax Court Judges.  See Harold Dubroff & Brant J. Hellwig, The United States Tax Court:  An Historical Analysis 239 (2d ed., Government Publishing Office 2014) (1979), http://www.ustaxcourt.gov/book/Dubroff_ Hellwig.pdf.  The oath of office for Judges of this Court, by Tax Court practice, is identical to the oath for Article III judges, i.e., a combination of the constitutional oath, see 5 U.S.C. sec. 3331 (2012), and the oath for judges, see 28 U.S.C. sec. 453 (2012).

[20]Equitable recoupment is a judicially created doctrine that in certain circumstances allows a litigant to avoid the bar of an expired statutory limitations period.  Bull v. United States, 295 U.S. 247 (1935).  In the tax context the doctrine prevents the inconsistent tax treatment of a single transaction, item, or event affecting the same taxpayer or a sufficiently related taxpayer.  Menard, Inc. v. Commissioner, 130 T.C. 54, 62 (2008).

Before 2006 section 1043 provided special rules for recognition of gain on the sale of property which would present a conflict of interest to "officer[s] or employee[s] of the executive branch of the Federal Government". In 2006 Congress amended section 1043 to apply to judicial officers, including Article III judges and "judges of the * * * Tax Court". Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 418(b), 120 Stat. at 2966. In 2008 Congress included Tax Court Judges in the definition of "Federal judges" in order to provide protection against false liens or encumbrances to Tax Court Judges. Court Security Improvement Act of 2007, Pub. L. No. 110-177, sec. 201(a), 121 Stat. at 2535-2536. Also in 2008 Congress expanded the duties of the U.S. Marshals Service to include providing security for and enforcing orders of the Tax Court. Id. secs. 101 and 102, 121 Stat. at 2534-2535.[21]

In 2011 section 7471(a) was amended to authorize the Tax Court to establish a personnel system similar to the personnel system for employees of Article III courts. Act of Jan. 4, 2011, Pub. L. No. 111-366, sec. 1(a), 124 Stat. at 4063. Section 7471(a)(4) provides in pertinent part that "[t]o the maximum extent

---

[21]After the 2008 amendment, 28 U.S.C. sec. 566(a) (2012) provides: "It is the primary role and mission of the United States Marshals Service to provide for the security and to obey, execute, and enforce all orders of the United States District Courts, the United States Courts of Appeals, the Court of International Trade, and the United States Tax Court, as provided by law."

feasible, the Tax Court shall compensate employees at rates consistent with those for employees holding comparable positions in courts established under Article III of the Constitution of the United States." Under the 2011 amendment, the Tax Court's personnel system shall provide that "any individual who would be a preference eligible in the executive branch" will be given preference "in a manner and to an extent consistent with preference accorded to preference eligibles in the executive branch." Sec. 7471(a)(10)(C). Section 7471(a)(10)(C) would be superfluous if the Tax Court were in the executive branch.

The 2015 Act[22] added several provisions applicable to the Tax Court and relevant here. First, section 7453 was amended to provide that "the proceedings of the Tax Court and its divisions shall be conducted in accordance with * * * the Federal Rules of Evidence." 2015 Act, div. Q, sec. 425, 129 Stat. at 3125. As a result of the 2015 Act, the Tax Court, which has applied the Federal Rules of

---

[22]The 2015 Act includes without change the provisions of S. 903, 114th Cong. (2015) ("Improve Access and Administration of the United States Tax Court"), reported by the Senate Finance Committee on April 14, 2015 (S. Rept. No. 114-14 (2015)). The provisions of S. 903 were introduced in the House of Representatives without change as tit. II, subtit. C, of the Tax Increase Prevention and Real Estate Investment Act of 2015, by Ways and Means Committee Chairman Brady on December 7, 2015, and were enacted with the 2015 Act.

Evidence since their enactment in 1975,[23] see, e.g., Conti v. Commissioner, 99

T.C. 370, 373 (1992), aff'd and remanded, 39 F.3d 658 (6th Cir. 1994), will follow

the Federal Rules of Evidence as applied by the U.S. Court of Appeals to which a

case is appealable, see Golsen v. Commissioner, 54 T.C. 742 (1970), aff'd, 445

F.2d 985 (10th Cir. 1971).[24]

Second, section 7470 provides that "the Tax Court may exercise, for

purposes of management, administration and expenditure of funds of the Court,

the authorities provided for such purposes by any provision of law * * * to a court

of the United States" as defined in 28 U.S.C. sec. 451 (2012), i.e., the Supreme

Court, the U.S. District Courts, the U.S. Courts of Appeals, and the Court of

International Trade.  2015 Act, div. Q, sec. 432, 129 Stat. at 3126.  Third, section

7470A authorizes the Tax Court to hold judicial conferences and to collect

reasonable fees related to those conferences.  Id.  This authority parallels

authorities provided to the U.S. Courts of Appeals by 28 U.S.C. sec. 333 (2012).

Fourth, section 7473 extends to the Tax Court authority for handling fees similar

_____

[23]The Federal Rules of Evidence are considered to be enacted like any statute.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 587 (1993).

[24]Before amendment in 2015, sec. 7453, first enacted in the 1926 Act, ch. 27, sec. 907, 44 Stat. at 107, required the Tax Court to apply the rules of evidence applicable in bench trials in the U.S. District Court for the District of Columbia.

to that provided to U.S. District Courts.  2015 Act, div. Q, sec. 432, 129 Stat. at 3126.[25]

Finally, section 7466[26] makes applicable to Tax Court Judges the judicial conduct and judicial disability procedures established by 28 U.S.C. secs. 351-364 (2012).  As a part of these procedures, if the Judicial Conference of the United States (Judicial Conference) determines that there are grounds for removal of a Tax Court Judge under section 7443(f), then the Judicial Conference "shall so certify and transmit the determination and the record of proceedings" to the President.  Sec. 7466(b); 28 U.S.C. sec. 355.[27]

---

[25]Certain fees paid to U.S. District Courts are deposited into a special fund of the Treasury to be available to offset funds appropriated for the operation and maintenance of those courts.  28 U.S.C. secs. 1914(a), 1931 (2012).

[26]Sec. 7466 was effective June 15, 2016.  Rules implementing sec. 7466 by the Tax Court were adopted on June 14, 2016.  U.S. Tax Court, Rules for Judicial Conduct and Disability Proceedings for the United States Tax Court, http://www.ustaxcourt.gov/rules/judicial_misconduct_or_disability/jcd_rules.pdf. Title 28 U.S.C. sec. 363 (2012) provides that those provisions are applicable to judges of the Courts of Appeals, the U.S. District Courts, the bankruptcy courts, the Court of Federal Claims, and to magistrate judges.  The Court of Appeals for Veterans Claims is also subject to those provisions.  38 U.S.C. sec. 7253(g) (2012).

[27]Similarly, under 28 U.S.C. sec. 355, under certain circumstances the Judicial Conference shall certify and transmit to the House of Representatives the determination and the record of proceedings where impeachment may be warranted.

Section 7466 provides several powers to the Tax Court identical to powers provided to Article III courts, including the powers to (1) issue subpoenas in connection with conduct hearings, see 28 U.S.C. sec. 356(a); (2) punish noncompliance with those subpoenas by contempt, see id. sec. 332(d)(2); (3) exercise the authority provided to Article III courts under 28 U.S.C. sec. 1821 (2012); (4) pay the fees and allowances described in that section, see sec. 7466(a)(1); and (5) award reimbursement for reasonable expenses, see 28 U.S.C. sec. 361.

The trend in the evolution of the Tax Court's governing statutes from 1969 to 2015 is clear:  Congress has continued to provide authority and design to the Tax Court more like those of other Federal courts and to distance the Tax Court from any operational or structural similarity to agencies within the executive branch.

C.      Caselaw Relating to the Jurisprudence and Status of the Tax Court

The case or controversy requirement under Article III presumptively applies in the Tax Court.  Antolick v. Commissioner, 422 F. App'x 859, 860-861 (11th Cir. 2011); Charlotte's Office Boutique, Inc. v. Commissioner, 425 F.3d 1203, 1211 n.7 (9th Cir. 2005) ("[L]imitations imposed upon Article III courts, such as the existence of an actual case or controversy, have been presumptively applied to

the Tax Court."), aff'g 121 T.C. 89 (2003); D'Andrea v. Commissioner, 263 F.2d 904, 906 (D.C. Cir. 1959); Anthony v. Commissioner, 66 T.C. 367, 368-370 (1976), aff'd without published opinion, 566 F.2d 1168 (3d Cir. 1977). Because the Tax Court is not an Article III court, application of case or controversy principles to the Tax Court results from caselaw, not from constitutional mandate. Baranowicz v. Commissioner, 432 F.3d 972, 975 (9th Cir. 2005) (stating that as an Article I court, the Tax Court is not fully constrained by the case or controversy limitation in Article III); Orum v. Commissioner, 412 F.3d 819, 821 (7th Cir. 2005), aff'g 123 T.C. 1 (2004).

The Tax Court has jurisdiction to decide constitutional disputes arising in cases over which it has jurisdiction. Estate of Brandon v. Commissioner, 828 F.2d 493, 499 (8th Cir. 1987) (remanding the case to the Tax Court to consider the constitutionality of an Arkansas dower statute), rev'g 86 T.C. 327 (1986), remanded to Estate of Brandon v. Commissioner, 91 T.C. 829, 835 (1988) (holding a gender-based Arkansas statute unconstitutional in the light of, for example, Frontiero v. Richardson, 411 U.S. 677 (1973)); Rager v. Commissioner, 775 F.2d 1081, 1083 (9th Cir. 1985) ("[W]e have often upheld Tax Court decisions which were based on a constitutional inquiry."), aff'g T.C. Memo. 1984-563; see also Crawford v. Commissioner, 266 F.3d 1120, 1122-1123 (9th Cir.

2001) (deciding a separation of powers issue relating to Special Trial Judges), aff'g T.C. Memo. 1999-361; Wiggins v. Commissioner, 904 F.2d 311, 314 (5th Cir. 1990) (holding retroactive application of a statute constitutional), aff'g 92 T.C. 869, 871-872 (1989).

Tax Court opinions are subject to stare decisis.  Smith v. Commissioner, 926 F.2d 1470, 1479 (6th Cir. 1991) ("We are not unmindful of the heavy burden placed upon the tax court by the doctrine of stare decisis and that any decision to depart from the doctrine requires 'special justification.'"), aff'g 91 T.C. 1049 (1988); see also Estate of Maxwell v. Commissioner, 3 F.3d 591, 599 (2d Cir. 1993) (Walker, J., dissenting) ("It is well established that the Tax Court is governed by the doctrine of stare decisis. * * * Indeed, the doctrine applies with special force in the tax context, given the important reliance interests involved." (the majority in Estate of Maxwell did not dispute this point)), aff'g 98 T.C. 594 (1992); Sec. State Bank v. Commissioner, 111 T.C. 210, 213-214 (1998), aff'd, 214 F.3d 1254 (10th Cir. 2000); Hesselink v. Commissioner, 97 T.C. 94, 99-100 (1991).  This well-established feature of American courts, see, e.g., Hilton v. S.C. Pub. Rys. Comm'n, 502 U.S. 197, 202 (1991) ("Time and time again, this Court has recognized that 'the doctrine of stare decisis is of fundamental importance to the rule of law.' * * * [W]e will not depart from the doctrine of stare decisis

without some compelling justification." (quoting Welch v. Tex. Dep't of Highways & Pub. Transp., 483 U.S. 468, 494 (1987))), contrasts with the less than certain state of the law applicable to administrative agencies.  Courts of Appeals have differed on whether the doctrine of stare decisis applies to administrative decisions.  See James E. Moliterno, "The Administrative Judiciary's Independence Myth", 41 Wake Forest L. Rev. 1191, 1198 (2006).  Compare Butler Cty. Mem'l Hosp. v. Heckler, 780 F.2d 352, 355-356 n.3 (3d Cir. 1985) (recognizing agency's right to "change course"), and Courier Post Pub. Co. v. FCC, 104 F.2d 213, 218 (D.C. Cir. 1939) (holding the policy of the Commission expressed in decided cases "is not a controlling factor upon the Commission"), with Teamsters Local Union No. 455 v. NLRB, 765 F.3d 1198, 1204 (10th Cir. 2014) (holding an administrative agency "may not * * * depart from a prior policy sub silentio or simply disregard rules that are still on the books" (quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009))), and Mendez-Barrera v. Holder, 602 F.3d 21, 26 (1st Cir. 2010) ("An administrative agency must respect its own precedent, and cannot change it arbitrarily and without explanation, from case to case.").

The Tax Court is not subject to the Freedom of Information Act, which by its terms does not apply to "the courts of the United States".[28]  5 U.S.C. sec. 552(f)(1) (2012) (incorporating the definition of "agency" in 5 U.S.C. sec. 551(1) (2012)); Megibow v. Clerk of the U.S. Tax Court, 432 F.3d 387 (2d Cir. 2005); Byers v. U.S. Tax Court, No.15-1605 (RC) (D.D.C. Sept. 30, 2016); Ostheimer v. Chumbley, 498 F. Supp. 890, 892 (D. Mont. 1980) (same), aff'd without published opinion, 746 F.2d 1487 (9th Cir. 1984).

Tax Court Judges have immunity from liability for damages for acts committed within their judicial jurisdiction to the same extent as Article III judges and State court judges instead of the more narrow form of immunity provided for executive branch officials.  Chisum v. Colvin, 276 F. Supp. 2d 1, 3 (D.D.C. 2003) (Tax Court Judges) (citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam) (State court judges), and Pierson v. Ray, 386 U.S. 547, 553-554 (1967) (municipal judges)).  In contrast, executive branch employees have limited immunity from lawsuits challenging actions taken in the course of their official duties, such as

---

[28]Tit. 5 U.S.C. sec. 551 (2012) provides in pertinent part as follows:  "For the purpose of this subchapter--(1) 'agency' means each authority of the Government of the United States, whether or not it is within or subject to review by another agency, but does not include--(A) the Congress, (B) the courts of the United States".

torts committed within the scope of their employment under the Federal Tort Claims Act, 28 U.S.C. sec. 2679 (2012).

D.      Kuretski v. Commissioner and Section 7441 as Amended in 2015

In Kuretski v. Commissioner, 755 F.3d at 943-945, the taxpayer contended that the President's authority under section 7443(f) to remove Tax Court Judges for inefficiency, neglect of duty, or malfeasance in office is unconstitutional because it violates separation of powers principles.[29]  The Court of Appeals held that the Tax Court is within the executive branch, making it unnecessary to decide whether authority for Presidential removal of Tax Court Judges violates separation of powers principles.  Id. at 938-942.  However, the following year Congress amended section 7441 by adding the sentence emphasized below:

> There is hereby established, under article I of the Constitution of the United States, a court of record to be known as the United States Tax Court.  The Tax Court is not an agency of, and shall be independent of, the executive branch of the Government.  The members thereof shall be known as the chief judge and the judges of the Tax Court. [2015 Act, div. Q, sec. 441, 129 Stat. at 3126; emphasis added.]

---

[29]In Kuretski v. Commissioner, 755 F.3d at 938, the Court of Appeals said the taxpayer in that case contended that the Tax Court exercises judicial power under Article III.  It is not apparent to us that the taxpayers in that case made that obviously incorrect argument.  In fact, in their answering brief at p. 11 the Kuretskis state that they "do not challenge the Tax Court Judges' non-Article III status".

In the explanation of the change contained in the report of the Senate Finance Committee, the Committee said it was--

> concerned that statements in Kuretski v. Commissioner may lead the public to question the independence of the Tax Court, especially in relation to the Department of Treasury or the Internal Revenue Service. The Committee wishes to remove any uncertainty caused by Kuretski v. Commissioner, and to ensure that there is no appearance of institutional bias. [S. Rept. No. 114-14, at 10, accompanying S. 903.]

The Court of Appeals in Kuretski v. Commissioner, 755 F.3d at 932, said the Tax Court "exercises executive authority as part of the Executive Branch." In contrast, the Supreme Court in Freytag v. Commissioner, 501 U.S. at 891, said the Tax Court exercises exclusively judicial power and does not exercise executive, legislative, or administrative power.[30] The Court of Appeals in Kuretski v. Commissioner, 755 F.3d at 943-944, made no constitutional distinction between the Tax Court and independent executive branch agencies even though, unlike the Tax Court, independent executive branch agencies exercise executive power under

---

[30]The Court of Appeals in Kuretski v. Commissioner, 755 F.3d at 944, cited several examples of independent agencies which "sit in 'independent' judgment of other executive actors." For instance, the Merit Systems Protection Board sits in judgment of other agencies, 5 U.S.C. sec. 1204(a), as does the Federal Labor Relations Authority, 5 U.S.C. sec. 7105(g); the Occupational Safety and Health Review Commission sits in judgment of the Secretary of Labor, 29 U.S.C. sec. 659(c); and the Postal Regulatory Commission sits in judgment of Postal Service, 39 C.F.R. secs. 3001 to 3018.

Article II of the Constitution.  See also Humphrey's Ex'r v. United States, 295 U.S. 602, 629-630 (1935); PHH Corp. v. Consumer Fin. Prot. Bureau, No. 15-1177, slip op. at 4 (D.C. Cir. Oct. 11, 2016).  In addition, independent executive branch agencies perform substantial nonadjudicatory functions, e.g., rulemaking, while the Tax Court "exercises judicial power to the exclusion of any other function."  Freytag v. Commissioner, 501 U.S. at 891.[31]

In considering the relationship between independent executive branch agencies and other executive branch agencies, the Court of Appeals in Kuretski v. Commissioner, 755 F.3d at 944, said that Congress may allow independent executive branch agencies "a measure of independence from other executive actors".  Presumably, "a measure of independence" means less than total independence.  If the Tax Court were in the executive branch, the relevant "other executive actor" would be the IRS.  Surely any taxpayer would find it repugnant if

---

[31]Unlike the statutes establishing the Tax Court, statutes establishing independent agencies in the executive branch typically require that appointments to their policymaking (i.e., quasi-legislative) governing bodies be balanced between the two major political parties.  See, e.g., statutes establishing the Federal Trade Commission, 15 U.S.C. sec. 41 (2012); the Equal Employment Opportunity Commission, 42 U.S.C. sec. 2000e-4 (2012); the Federal Communications Commission, 47 U.S.C. sec. 154(b)(5) (2012); the Securities and Exchange Commission, 15 U.S.C. sec. 78d(a) (2012); and the Federal Election Commission, 52 U.S.C. sec. 30106 (2012); see also PHH Corp. v. Consumer Fin. Prot. Bureau, No. 15-1177 (D.C. Cir. Oct. 11, 2016).

the Tax Court, which by congressional design is the Federal court which decides the most taxpayer disputes with the IRS, has only some nebulous "measure of independence" from the IRS.

According to the specific text added to section 7441 in 2015, particularly in contrast to the opinion of the Court of Appeals in Kuretski, it appears that in 2015 Congress emphasized the Supreme Court's characterization of the Tax Court in Freytag and Congress' own characterization of the Tax Court in the legislative history of the 1969 Act as independent of the executive branch. Specifically, by providing that the Tax Court is not an executive agency and is independent of the executive branch, the 2015 amendment to section 7441 in substance codifies the following language in the 1969 Finance Committee report, i.e.: "The committee believes it is anomalous to continue to classify * * * [the Tax Court] with quasi-judicial executive agencies". The 2015 amendment to section 7441 also codifies a clause from the Supreme Court's opinion in Freytag v. Commissioner, 501 U.S. at 891, i.e., "[t]he Tax Court remains independent of the Executive * * * Branch[es]".

## Discussion

Like the taxpayers in Kuretski, petitioners contend that the Tax Court is not within the executive branch and that the President's authority under section

7443(f)(1) violates separation of powers principles. For reasons discussed below, we will deny petitioners' motion.

A.    Disqualification Is Not Required.

Petitioners seek rulings that all Tax Court Judges must recuse themselves from deciding any further cases because, according to petitioners, section 7443(f) is unconstitutional. We disagree here that recusal is required and below at Part B that section 7443(f) is unconstitutional.

Courts have occasionally been presented with issues in which all judges of the court have a conflict of interest or are alleged to be biased, and, because it is necessary for the work of the court to proceed, have not recused themselves. See United States v. Will, 449 U.S. 200, 213-216 (1980) (judicial salaries) ("The Rule of Necessity has been consistently applied in this country in both state and federal courts."); Evans v. Gore, 253 U.S. 245 (1920) (taxation of judicial incomes), overruled by United States v. Hatter, 532 U.S. 557, 571 (2001); Guinn v. Finesilver, 48 F.3d 1232 (10th Cir. 1995); In re Complaint of Doe, 2 F.3d 308 (8th Cir. 1993) (recusal not required where a party sues judges who have heard that party's case); In re N.M. Nat. Gas Antitrust Litig., 620 F.2d 794, 795 (10th Cir. 1980); In re Va. Elec. Power Co., 539 F.2d 357, 360 (4th Cir. 1976) (utility rates); Cupp v. Commissioner, 65 T.C. 68, 86-87 (1975) (recusal not required in a Tax

Court case brought by a taxpayer who previously sued all Tax Court Judges in other courts), aff'd without published opinion, 559 F.2d 1207 (3d Cir. 1977).

The Rule of Necessity has been expressed through a maxim of law that where all are disqualified, none are disqualified. Evans, 253 U.S. at 252-255. We conclude that under the Rule of Necessity we may properly act on petitioners' motion. There is indeed a necessity that we do so. Every case before us involves the issue that petitioners here present, and either we must suspend our activity in every case (thereby effectively granting petitioners' motion), or we must go about our business (thereby effectively denying it). We cannot avoid the question by the recusal of one Judge in the instant case.

B.    Procedures for Removal of Tax Court Judges for Cause Do Not Violate Separation of Powers Principles.

In this part we conclude that regardless of the branch location of the Tax Court, provisions authorizing removal of Tax Court Judges are constitutional.

1.    Public Rights Doctrine

Although it is universally understood that our system has three branches of Government, the U.S. Constitution does not use "branch" in that context. Instead of identifying three branches of Government, the text of the Constitution identifies three "Power[s]"--i.e., it vests "[a]ll legislative Powers * * * in a Congress"

(Article I), "[t]he executive Power * * * in a President" (Article II), and "[t]he judicial Power" in certain courts presided in by certain judges (Article III). The President is given only "the executive Power".[32]

Beyond what the Constitution expressly permits (such as appointment), Congress may not authorize the President to impede exercise by the Article III courts of "the judicial Power of the United States".

Article III, section 1, vests the power to adjudicate certain disputes solely in courts whose judges have lifetime appointments. The scope of this exclusive judicial power has been construed to be "matter[s] which, from * * * [their] nature, * * * [are] the subject of a suit at the common law, or in equity, or admiralty"; and

_____

[32]The only reference to "branch[es]" in the Constitution is to what are sometimes called the two "houses" of a legislature. See art. I, sec. 2 ("[T]he Electors in each State shall have the Qualifications requisite for Electors of the most numerous Branch of the State Legislature."); amend. XVII (to the same effect). Similarly, the Federalist Papers sometimes use "branch" to refer to one of the two legislative houses. See, e.g., The Federalist No. 37 (James Madison) ("the different legislative branches"), No. 47 (James Madison). The Federalist Papers sometimes refer to the legislative, the executive, and the judicial "departments", see, e.g., id. No. 45 (James Madison) ("the three great departments of the [governments of the] thirteen States"); id. No. 47 ("the legislative department" in the Massachusetts Constitution and "the judiciary department" in the New York Constitution); id. No. 48 (James Madison) ("the legislative, executive, and judiciary departments"), but also sometimes use "branch" to refer to the executive, legislative, or judicial branch as we now do, see, e.g., id. No. 41 (James Madison) No. 45, No. 49 (James Madison or Alexander Hamilton), No. 78 (Alexander Hamilton).

outside that scope are matters that "congress may or may not bring within the cognizance of * * * [Article III courts], as it may deem proper." Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. (18 How.) 272, 284 (1855).

The adjudication of public rights disputes may, for example, be assigned by Congress to Article I judges. N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 73-74 (1982) (Brennan, J., plurality opinion). While the Tax Court exercises a portion of the judicial power of the United States, Freytag v. Commissioner, 501 U.S. at 890, it has jurisdiction to adjudicate only public rights disputes, see infra pp. 37-38, and thus does not exercise that portion of the judicial power that is reserved for Article III judges.

In considering the constitutionality of section 7443(f), the question that arises is: "Does providing to the President the authority to remove Tax Court Judges give the President any unconstitutional power to interfere with the Article III judicial power of the United States?" The answer is no; it gives the President no such unconstitutional power.

In Am. Ins. Co. v. 356 Bales of Cotton, 26 U.S. (1 Pet.) 511 (1828), the Supreme Court observed that Article IV bestowed upon Congress alone a complete power of government over territories not within the States and acknowledged Congress' authority to create courts for those territories that are not

in conformity with Article III.  N. Pipeline Constr. Co., 458 U.S. at 63-64.  The Supreme Court followed similar reasoning when it reviewed Congress' creation of non-Article III courts in the District of Columbia.  Kendall v. United States ex rel. Stokes, 37 U.S. (12 Pet.) 524, 618-619 (1938).  Congress also may assign courts-martial authority other than to Article III courts.  Dynes v. Hoover, 61 U.S. (20 How.) 65 (1857).

The Supreme Court has upheld the validity of statutes which authorize Article I courts and administrative agencies to decide public rights disputes.  Id. at 67-68.  In Murray's Lessee, 59 U.S. (18 How.) at 284, the Court stated:  "[T]here are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which Congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper."  Because the sovereign could not be sued at common law (under which the sovereign was immune), "public rights" cases against the Government are not among the "suit[s] at the common law, or in equity, or admiralty" that constitute the exclusive sphere of the Article III courts.  Id.  The Court later expanded on this as follows:

> This [public rights] doctrine may be explained in part by reference to the traditional principle of sovereign immunity, which recognizes that the Government may attach conditions to its consent

to be sued. * * * But the public-rights doctrine also draws upon the principle of separation of powers, and a historical understanding that certain prerogatives were reserved to the political Branches of Government. The doctrine extends only to matters arising "between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments," * * * and only to matters that historically could have been determined exclusively by those departments * * *. The understanding of these cases is that the Framers expected that Congress would be free to commit such matters completely to nonjudicial executive determination, and that as a result there can be no constitutional objection to Congress' employing the less drastic expedient of committing their determination to a legislative court or an administrative agency. [N. Pipeline Constr. Co., 458 U.S. at 67-68 (quoting Crowell v. Benson, 258 U.S. 22, 50 (1932)).]

The Supreme Court has not definitely established in all respects the distinction between public rights and private rights, see, e.g., Stern v. Marshall, 564 U.S. 462, 490 (2011); however, generally speaking, controversies "between the government and others" involve public rights and thus may be removed from Article III courts and delegated to Article I courts or administrative agencies for their determination, N. Pipeline Constr. Co., 458 U.S. at 69-70 (quoting Ex Parte Bakelite Corp., 279 U.S. 438, 451 (1929)).

The Tax Court's jurisdiction is limited to the adjudication of public rights disputes.[33] The Tax Court decides only disputes between the sovereign and the

---

[33]Those disputes relate primarily to tax liability, tax payment obligations, and the tax status of various entities and transactions. See, e.g., secs. 6214(a)

(continued...)

subject which are neither suits at common law, nor in equity, nor admiralty. Under the Constitution, Congress had the option to grant no remedy at all as to these matters, and "as a result there can be no constitutional objection to Congress' * * * committing their determination to a legislative court or an administrative agency." Id. at 68.[34]

Separation of powers concerns may be implicated if Presidential removal power could interfere with "the constitutionally assigned mission of" the judicial branch. Mistretta v. United States, 488 U.S. 361, 411 n.35 (1989). But if the President sought to exercise the power to remove a Tax Court Judge, the President would not thereby be affecting any matter within the portion of the "judicial Power of the United States" that is necessarily exercised by Article III judges. The Tax Court handles no such matters, and the separation of powers is therefore not implicated.

---

[33](...continued)
(deficiency), 6330(d)(1) (collection due process cases), 7623(b)(4) (whistleblower cases), 6015(e) (relief from joint and several liability), 6226 (final partnership administrative adjustments), 6404(i) (interest abatement claims), 6110(f)(3) (disclosure actions).

[34]Congress also could have assigned the adjudication of public law disputes to Article III courts. Art. III, sec. 2, of the Constitution provides in pertinent part: "The judicial Power shall extend to all Cases * * * arising under * * * the Laws of the United States, and * * * all * * * Controversies to which the United States shall be a Party".

2.     Interbranch Authority

Interbranch removal is not necessarily constitutionally impermissible.  In

Bowsher v. Synar, 478 U.S. 714 (1986), the Supreme Court considered whether

the assignment by Congress to the Comptroller General of the United States (a

legislative branch official, removable for cause by Congress) of certain executive

functions (e.g., reducing spending by each agency in implementing a sequester)

under the Balanced Budget and Emergency Deficiency Control Act of 1985

violated the doctrine of separation of powers.  The Supreme Court held that

Congress had violated separation of powers principles in providing that executive

authority to an official subject to removal by the Congress.  Id. at 735-736.

However, in discussing its holding in Bowsher in a later case, the Supreme Court

said:  "Nothing in Bowsher, however, suggests that one Branch may never

exercise removal power, however limited, over members of another Branch.

Indeed, we already have recognized that the President may remove a judge who

serves on an Article I court."  Mistretta, 488 U.S. at 411 n.35;[35] McAllister v.

United States, 141 U.S. 174, 185 (1891).

---

[35]This passage in Mistretta v. United States, 488 U.S. 361 (1989), shows
that Article I judges need not be within the executive branch.

In McAllister, the Supreme Court held it was not an unconstitutional violation of the separation of powers for the President to remove an individual appointed to a four-year term as a non-Article III District Judge for the District of Alaska (which was then a territory).  In Mistretta, 488 U.S. at 409-411, the Supreme Court held that the President's authority to remove Article III judges from the Sentencing Commission, an independent body which the statute placed in the judicial branch, see 28 U.S.C. sec. 991 (2012), "for neglect of duty or malfeasance in office or for other good cause"[36] did not violate separation of powers principles.  The Supreme Court also said its "paramount concern in Bowsher that Congress was accreting to itself the power to control the functions of another Branch is not implicated by a removal provision, like the one at issue * * * [in Mistretta], which provides no control in one Branch over the constitutionally assigned mission of another Branch."  Mistretta, 488 U.S. at 411 n.35 (emphasis added).  Such limited removal power gives the President no control over judicatory functions.  Id.

The authority of the President to remove only for cause, like the removal provisions upheld in Mistretta, Morrison v. Olson, 487 U.S. 654, 688 (1988), and

---

[36]That provision is similar to the President's authority to remove Tax Court Judges "after notice and opportunity for public hearing, for inefficiency, neglect of duty, or malfeasance in office, but for no other cause."  Sec. 7443(f).

Humphrey's Ex'r v. United States, 295 U.S. 602, 630 (1935), is specifically crafted to prevent the President from exercising "coercive influence" over the public official who may be removed from office only for good cause. Mistretta, 488 U.S. at 411.

The removal statutes, section 7443(f) and 28 U.S.C. secs. 354(b) and 355, provide roles for both the President and the Judicial Conference of the United States, the later of which "shall" recommend removal in appropriate circumstances on the basis of "inefficiency", "neglect of duty", or "malfeasance" by a Tax Court Judge."

There is no statutory requirement that the President await action by or defer to action by the Judicial Conference in the removal of a Tax Court Judge. However, it appears reasonable to expect that, if the President were to consider a removal action under section 7443(f), there would at a minimum be interest in whether the Judicial Conference had found cause for removal. In any event, none of those issues arose before 2015 when the sole statutory provision relating to removal of Tax Court Judges referred to the President.

The Supreme Court has said that the terms "inefficiency", "neglect of duty", and "malfeasance" are very broad and could sustain removal for any number of actual or perceived transgressions. Bowsher, 478 U.S. at 728-730. However, even

without considering the potential effect of the Judicial Conference on the removal process, the President's authority to remove Tax Court Judges is more circumscribed than the removal authority at issue in McAllister, where the President was empowered to remove the judge of a territorial court for any reason whatever. Limiting removal power to "good cause" is a significant restriction of the President's discretion, Wiener v. United States, 357 U.S. 349 (1958), and is "an impediment to, not an effective grant of, Presidential control", Morrison, 487 U.S. at 706 (Scalia, J., dissenting) (citing Humphrey's Ex'r, 295 U.S. at 602).

C.      Petitioners' Request a Remedy Because of an Appearance of Bias.

In addition to voicing objections to section 7443(f), petitioners object to several features of Tax Court litigation, such as the burden of proof, sec. 7491; Welch v. Helvering, 290 U.S. 111 (1933); limitation of reimbursement of litigation costs, sec. 7430; the lack of jury trials, see Rule 74(c) (allowing the taking of depositions requested by one party without the consent of the other party only as an extraordinary procedure and when approved by the Court); Wickwire v. Reinecke, 275 U.S. 101, 105-106 (1929); Swanson v. Commissioner, 65 T.C. 1180, 1181, 1182 (1976). Petitioners contend that these features of Tax Court litigation are so flawed that the Tax Court should immediately suspend adjudication of all cases. Petitioners provide no legal justification (other than their

constitutionality argument relating to the removal provision rejected above in Part C) for their request for relief.  Absent a finding of unconstitutionality or other sufficient legal justification, we need not further consider petitioners' policy-related arguments.

D.    Conclusion

The Court of Appeals in Kuretski had available at least two alternative routes for deciding the taxpayer's contentions.  First, it could have decided (as it did) that the Tax Court is within the executive branch, thus mooting the separation of powers issue.  Alternatively, without reaching the branch issue, it could have decided whether interbranch removal violates separation of powers principles irrespective of the Tax Court's branch status.

We have the same choice in acting on petitioners' motion.  In contrast to the approach taken by the Court of Appeals in Kuretski, we hold in Part B, supra pp. 33-42, that Presidential authority to remove Tax Court Judges for cause does not violate separation of powers principles.  We so conclude because, even though Congress has assigned to the Tax Court a portion of the judicial power of the United States, Freytag v. Commissioner, 501 U.S. at 890, the portion of that power assigned to the Tax Court includes only public law disputes and does not include matters which are reserved by the Constitution to Article III courts.

Courts are reluctant to overturn statutes on constitutional grounds. United States ex rel. Attorney Gen v. Del. & Hudson Co., 213 U.S. 366, 407-408 (1909). Petitioners have not met the heavy burden of showing the removal provision is unconstitutional or has the appearance of being a source of bias. Thus, whatever the merits of providing for Presidential authority to remove Tax Court Judges, that authority presents no concerns of constitutional magnitude. Thus we will deny petitioners' motion.

The 1969 Act sec. 951, 83 Stat. at 730, deleted from section 7441 the prior longstanding designation of the Tax Court as an "agency" and the provision that the Tax Court is "in the Executive Branch of Government". The deletion of words is properly considered in determining the meaning of statutes. See Wells, 519 U.S. at 492-493.[37] In Freytag the Supreme Court clearly stated the Tax Court's relationship to the three powers (executive, legislative, and judicial) identified in the Constitution. That is, in defining the Tax Court's "constitutional status and its role in the constitutional scheme", the Supreme Court said the Tax Court exercises only judicial power and does not exercise executive, legislative, or administrative

[37]The following year we opined that Congress intended in the 1969 Act to remove the Tax Court from the executive branch. Burns, Stix Friedman & Co. v. Commissioner, 57 T.C. at 395. We have not revisited that proposition herein or at any other time since 1971.

power.  <u>Freytag v. Commissioner</u>, 501 U.S. at 887-890.  In our view, the public rights holding above resolves the removal issue without requiring that we address the tension with legislative intent that might be thought to arise under the opinion of the Court of Appeals in <u>Kuretski</u>.  Having decided petitioners' motion on that basis, we will follow the lead of Congress and the Supreme Court in <u>Freytag</u> and not further address the branch placement of the Tax Court here.[38]

<u>An appropriate order will be issued</u>.

---

[38]For a discussion of the Tax Court's place in the branches of Government, see Brant J. Hellwig, "The Constitutional Nature of the United States Tax Court", 35 Va. Tax Rev. 269 (2015).